IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HILLARY BUECHLER, | ) | |
| | ) | |
| Appellant, | ) | No. 30321-7-III |
| | ) | |
| v. | ) | |
| | ) | |
| WENATCHEE VALLEY COLLEGE, a | ) | |
| Division of the State of Washington; and | ) | |
| JENNIFER CAPELO, individually; and | ) | |
| MARCO AZURDIA, individually, | ) | PUBLISHED OPINION |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Hillary Buechler appeals the dismissal of her claims against Wenatchee Valley College (WVC) and two of its administrators. The claims challenged disciplinary action taken against Ms. Buechler for sharing prescription medication for her migraine headaches with two classmates. On material facts that were undisputed, the trial court correctly concluded that the evidence did not support Ms. Buechler's claims for relief. For that reason, and because Ms. Buechler demonstrates no error by the trial judge in failing to recuse herself, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Hillary Buechler was enrolled in the nursing program at WVC until she was dismissed from the program in August 2009 for sharing three prescription pills (Flexeril and Ritalin) with classmates. Ms. Buechler had been prescribed both medications to treat her rapid onset migraines.

Ms. Buechler's sharing of her prescription medication first came to the attention of the college administration when Jennifer Capelo, nursing administrator for WVC's nursing program and associate dean of allied health, received a phone call from the parent of a nursing student, who reported that her daughter had seen Ms. Buechler provide prescription drugs to fellow students. Later the same day, two nursing students came to Dean Capelo's office, unsolicited, to report that they had seen Ms. Buechler give prescription drugs to two classmates.

Dean Capelo telephoned Ms. Buechler about the students' allegations the same afternoon. Ms. Buechler did not deny that she shared prescription drugs with fellow students and, at Dean Capelo's request, provided a written statement the following day. Her signed statement read:

> On August 4, 2009 I gave a student before class two Flexeril. She had had a migraine and I told her that when I get migraines my muscle relaxers help. Although I am not a doctor, nor am I qualified to issue medications she stated she had taken them before and want to [sic] so I placed them in her hand. After class in the atrium of the Wenatchi Hall, as I was handing another student a 10 mg Ritalin pill, I had a student advise me that it was not appropriate to do that and I shouldn't. I responded to

2

that student that it was just a Tylenol feeling that it was not an appropriate place or time to discuss the matter. I felt that since we were good friends it would be more appropriate for us to talk while walking out to our cars. As I was walking away I told the student I gave the Ritalin to only take half of it and see how he felt and then to take the other half later if he wanted to. He had asked me a week prior how it felt to take it and I told him I would let him try it. Again I am not a doctor nor qualified to give prescription medication. My actions were undue and inappropriate.

These were isolated incidents and I have not given prescription medications to other students at other times including clinical rotations, while on clinical sites or academic class. I do carry selected prescription with me due to rapid onset migraines. To the best of my recollection I have not offered a student any prescription medication while in an academic setting.

Clerk's Papers (CP) at 382.

Dean Capelo forwarded Ms. Buechler's statement, statements she had obtained from the two students who approached her on August 4, and a statement from the student who received the Ritalin tablet, to Marco Azurdia, vice-president of student development for WVC. Dean Capelo also reported Ms. Buechler's actions to the Washington Department of Health in light of Ms. Buechler's licensure, at the time, as a certified nurse assistant.[1]

Mr. Azurdia asked that Ms. Buechler meet with him on August 31. He considered the meeting "an informal opportunity for Ms. Buechler to explain her version of what

---

[1] In November 2010, Ms. Buechler agreed to an informal disposition of the Department of Health's investigation into Dean Capelo's report. The agreed disposition placed Ms. Buechler on probation for 12 months and required her to complete 10 hours of continuing ethics education. It did not foreclose her from continuing her nursing education or working in the nursing field.

3

happened." CP at 346. Before the meeting, Mr. Azurdia asked Dean Capelo for her recommendation as to appropriate discipline. Dean Capelo recommended that Ms. Buechler be dismissed from the nursing program.

Ms. Buechler attended the August 31 meeting with her lawyer. She did not deny giving the drugs to the students and, when asked, stood by her August 5 written statement. After hearing her out, Mr. Azurdia told Ms. Buechler and her lawyer he had decided that her conduct warranted dismissal from the nursing program, although not from the college. He told her that she was entitled to appeal his decision.

In a letter sent the same day, Mr. Azurdia stated that based on Ms. Buechler's admissions, "[t]he college is proceeding with disciplinary actions against you." CP at 351. He itemized the provisions of the college's student handbook, nursing handbook, and The American Nurses Association Code of Ethics that he believed she had violated. The letter stated that due to the listed violations, "the college is suspending you from the nursing program immediately." *Id.* It concluded:

> It is your right to appeal this decision. If you wish to appeal the decision please review the student disciplinary process in the ASWVC student handbook. If you have any questions please feel free to contact my administrative assistant.

*Id.*

Ms. Buechler did not appeal Mr. Azurdia's decision. Instead, she filed the action below.

4

Ms. Buechler's complaint, which named WVC and Dean Capelo as defendants (Mr. Azurdia was later named a defendant by amendment), alleges claims for (1) negligent dismissal from the nursing program in violation of WVC's disciplinary procedures and requirements, (2) violation of her constitutional rights to due process and equal protection, (3) failure to comply with promises of specific treatment in specific circumstances, and (4) promissory estoppel.

In particular, Ms. Buechler alleged that WVC implemented disciplinary action contrary to the procedure provided by Title 132W of the Washington Administrative Code (WAC). As a result, she asserted, she was "deprived of the ability to confront her accusers, to cross examine them, to know the evidence presented against her or to a timely hearing in a meaningful manner before her removal from the Nursing Program." CP at 6.

A few months after Ms. Buechler's action was filed, Superior Court Judge Lesley Allan, to whom the case was assigned, wrote the parties' lawyers, advising them that between 1990 and 1998 she had served as an assistant attorney general, assigned to represent WVC. She also disclosed that she believed she knew Dean Capelo as the owner of a quilt store the judge had frequented before the store closed. The judge concluded:

> I do believe that I can be fair to both sides in this matter. However, I also believe it is my ethical duty to disclose these prior relationships with the defendants. If, in light of this information, any party desires that I

recuse from hearing this matter, I will do so without the necessity of the filing of an affidavit of prejudice.

CP at 204. Ms. Buechler's lawyer responded the following week, stating he did not feel the judge needed to recuse herself.

Several weeks later, the parties filed cross motions for summary judgment. After taking several issues under advisement, the trial court granted summary judgment dismissing all of Ms. Buechler's claims. Ms. Buechler appeals.

## ANALYSIS

Ms. Buechler assigns error to what she characterizes as several holdings of the trial court. In substance, she appeals the court's dismissal of her first three claims. She also assigns error to Judge Allan's failure to recuse herself, "placing the burden instead upon Buechler to move for a new judge." Br. of Appellant at 2.

In arguing on appeal that WVC violated her "due process rights," Ms. Buechler speaks interchangeably of two things: her right to invoke the disciplinary procedures set forth in Title 132W WAC, on the one hand, and her right of due process guaranteed by the United States Constitution, on the other. Since the starting point for much of her briefing is the disciplinary process set forth in the state regulations, we first address the trial court's dismissal of her claim that WVC failed to comply with state regulations. We then address dismissal of her 42 U.S.C. § 1983 claim, her claim asserting a promise of

6

specific treatment in specific circumstances, and, finally, her assignment of error to the trial court judge's failure to recuse.

I

The trial court dismissed Ms. Buechler's claims on summary judgment. "The standard of review of an order of summary judgment is de novo, and the appellate court performs the same inquiry as the trial court." *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

WVC is a public institution of higher education. RCW 28B.50.040(15). As such, and as alleged by Ms. Buechler's complaint, its disciplinary proceedings are agency actions governed by the Administrative Procedure Act, chapter 34.05 RCW. RCW 34.05.010(2). WVC's board of trustees is required to enforce rules prescribed by the state board for community and technical colleges and is authorized to adopt its own rules, including rules relating to discipline. RCW 28B.50.140(13). The parties agree that the controlling discipline rules are those set forth in chapter 132W-115 WAC (Code of Student Conduct—Wenatchee Valley College). They disagree whether the applicable rules were followed by Mr. Azurdia.

Ms. Buechler argues that the rules did not authorize Mr. Azurdia, unilaterally, to dismiss her from the nursing program. She contends that in the case of serious

7

disciplinary action—including dismissal from a professional program—the disciplinary rules require that she first receive a hearing before the academic regulations committee (ARC), a committee recognized and delegated responsibility in a number of provisions of chapter 132W-115 WAC. Ms. Buechler also reads Mr. Azurdia's August 31 letter as charging her, among other code of conduct violations, with distributing "illicit" drugs and violating the code of conduct in classroom and clinical situations—charges for which, she argues, he had no evidence.

WVC insists that Mr. Azurdia was authorized to dismiss Ms. Buechler from the nursing program unilaterally. The following regulations are supportive of its position that Mr. Azurdia could, at his option, either refer Ms. Buechler's disciplinary case to the ARC in the first instance or make a unilateral decision, in which case she could appeal to the ARC. The italicized language from the following provisions is relied upon by WVC:

> **WAC 132W-115-100 Disciplinary process.** (1) Any infractions of college policies or procedures may be referred by anyone within the college community to the dean of student services or designee.[2] That official shall then follow the appropriate procedures *for any disciplinary action which he or she deems necessary* relative to the alleged misconduct.
>
> (2) *The disciplinary official may take whatever action deemed appropriate within the framework of this code.* If the student concludes that any sanctions imposed are inappropriate, the student may appeal to the academic regulations committee.

---

[2] Before serving as vice-president of student development, Mr. Azurdia served as dean of student services. Ms. Buechler does not dispute that he was the "dean of student services or designee" within the meaning of these rules.

(3) If a referral or an appeal is made to the academic regulations committee, the committee shall hold a hearing, reach conclusion, and recommend sanctions. The student may appeal all cases involving suspension or dismissal from the college to the president of the college. All other cases may be appealed to the administrator designated by the president.

. . . .

**WAC 132W-115-110 Procedures for resolving disciplinary violations.** (1) The dean of student services is responsible for initiating disciplinary proceedings. . . .

. . . .

(3) Upon initiation of formal disciplinary proceedings, the dean of student services . . . shall provide written notification to the student . . . specifying the violations with which the student is charged. The dean of student services . . . shall set a time and place for meeting with the student to inform the student of the charges, the evidence supporting the charges, and to allow the student an opportunity to be heard regarding the charges and evidence.

*(4)* After considering the evidence in a case and interviewing the student or students involved, *the dean of student services or designee may take any of the following actions:*

. . . ;

*(e) Impose disciplinary sanctions directly, subject to the student's right of appeal as described in this chapter.* The student shall be notified in writing of the action taken except that disciplinary warnings may be given verbally;

*(f) Refer the matter to the academic regulations committee requesting their recommendation for appropriate action.* The student shall be notified in writing that the matter has been referred to the academic regulations committee.

(Emphasis added.)

For her part, Ms. Buechler cites other sections of chapter 132W-115 WAC that, it can be argued, call into doubt whether the dean or designee has authority to take such serious disciplinary action unilaterally. For example, WAC 132W-115-110(6) qualifies

9

the dean's authority under subsection (4)(e), above, by providing that "summary suspension" of a student is only appropriate where the dean has cause to believe that the student "[p]resents an imminent danger either to himself or herself, other persons on the college campus or to the educational process" and has either committed a felony or violated a provision of chapter 132W-115 WAC. Where this heightened standard is satisfied, the remaining subsections of the rule contemplate that the suspended student will receive a probable cause hearing, with any continued suspension requiring the written approval of the president of the college. WAC 132W-115-110(7)-(13). While WVC now refers to the sanction imposed against Ms. Buechler as dismissal from the nursing program—and dismissal is what, in substance, it appears to have been—Mr. Azurdia's written confirmation of his decision stated "the college is *suspending* you from the nursing program immediately." CP at 352 (emphasis added).

The two sections of the WAC that follow 132W-115-110 address procedures to be followed by the ARC in handling charges of "serious disciplinary violations," "where suspension or summary suspension from college can result." WAC 132W-115-120, -130. They can be read to apply only when a serious disciplinary matter is referred or appealed to the ARC. But a colorable argument can be made from chapter 132W-115 WAC in its entirety that, reasonably read, the rules do not permit a dean who cannot *summarily suspend* a student unilaterally without triggering an automatic hearing or review, may nonetheless *permanently dismiss* a student from a professional program unilaterally

10

without triggering any of the same safeguards. *See also* WAC 132W-112-130 (stating the students subject to disciplinary action "are entitled to a hearing, the procedures of which guarantee that the student will receive fair treatment" and "[p]ending action on college . . . charges, the status of a student will not be altered").

The issue before us is not how to reconcile these provisions, however. Under the procedure as understood by WVC—and WVC's reading is defensible, given the provisions it relies on—it explicitly notified Ms. Buechler that she had a right to appeal. Ms. Buechler was told in person and by letter that she had the right to appeal. Both WVC's student handbook and the nursing handbook laid out the steps to appeal. Disputes over the meaning of ambiguous procedural requirements, like Mr. Azurdia's contested factual findings, are the sorts of issues that could and should have been presented on appeal.

WVC has created the ARC, a body that includes faculty, student, and administrative representatives, and has authorized it to hear student appeals of discipline decisions. By failing and refusing to appeal, Ms. Buechler deprived WVC of what it intended as a process of review should errors be made at the first stage of the disciplinary process.

A party may generally seek judicial review of administrative action only after exhausting all of the administrative remedies available within the agency whose action is being challenged. RCW 34.05.534; *McConnell v. City of Seattle*, 44 Wn. App. 316, 321,

11

722 P.2d 121 (1986). "Exhaustion is required when: (1) a claim is cognizable in the first instance by an agency alone; (2) the agency has clearly established mechanisms for the resolution of complaints by aggrieved parties; and (3) the administrative remedies can provide the relief sought." *Milligan v. Thompson*, 90 Wn. App. 586, 596, 953 P.2d 112 (1998) (citing *S. Hollywood Hills Citizens Ass'n for Pres. of Neighborhood Safety & Env't v. King County*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984)).

The exhaustion doctrine advances a number of sound policies; among others, it avoids premature interruption of the administrative process, provides for full development of the facts, and gives an agency the opportunity to correct its own errors. *Harrington v. Spokane County*, 128 Wn. App. 202, 209-10, 114 P.3d 1233 (2005).

Ms. Buechler nonetheless argues that because she brought a claim under § 1983, it was unnecessary for her to exhaust her administrative remedies. WVC does not contend that exhaustion is a defense to her § 1983 claim;[3] it argues that it is a defense to her state law claims. The exhaustion doctrine applies to Ms. Buechler's state law claims, and it

---

[3] A plaintiff need not exhaust state administrative remedies before proceeding with a § 1983 claim. *Felder v. Casey*, 487 U.S. 131, 147, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988) (clarifying that the holding of *Patsy v. Bd. of Regents*, 457 U.S. 496, 516, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982) that a plaintiff need not exhaust administrative remedies applies to § 1983 claims asserted in state court); *Binkley v. City of Tacoma*, 114 Wn.2d 373, 388, 787 P.2d 1366 (1990). We do not apply the exhaustion doctrine to Ms. Buechler's § 1983 claim. *See* Section II, *infra*.

does so even if her arguments include a constitutional challenge to the agency's procedures. *Id.* at 210.

Alternatively, Ms. Buechler argues that her failure to appeal Mr. Azurdia's decision should be excused on grounds of futility. A court may relieve a petitioner of the exhaustion requirement if exhaustion would be futile. RCW 34.05.534(3)(b). Whether exhaustion of administrative remedies would be futile is a question for the court. *Beard v. King County*, 76 Wn. App. 863, 871, 889 P.2d 501 (1995) (citing *Estate of Friedman v. Pierce County*, 112 Wn.2d 68, 77, 768 P.2d 462 (1989)).

It has been said that exhaustion is excused as futile when "'the available administrative remedies are inadequate, or if they are vain and useless.'" *Orion Corp. v. State*, 103 Wn.2d 441, 458, 693 P.2d 1369 (1985) (quoting 4 ROBERT M. ANDERSON, AMERICAN LAW OF ZONING § 26.10 (2d ed. 1977)). Futility that will excuse exhaustion arises only in rare factual situations. *Dils v. Dep't of Labor & Indus.*, 51 Wn. App. 216, 219, 752 P.2d 1357 (1988). A plaintiff's subjective belief that an internal administration procedure is futile is insufficient to establish futility. *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 133, 769 P.2d 298 (1989). Futility is not shown by speculation that appeal would have been futile. *See Beard*, 76 Wn. App. at 871 (plaintiffs could not ask court to excuse their failure to apply for promotion based on speculation that decision maker was biased against them).

13

According to Ms. Buechler, futility is evident here because Mr. Azurdia sat on the ARC and his initial decision would have "poisoned" the process. Br. of Appellant at 36. To begin with, the evidence establishes that Mr. Azurdia's role would be to present information to the panel, not to sit as a voting member. More importantly, Ms. Buechler has not demonstrated that the ARC has routinely rubber-stamped Mr. Azurdia's decisions, nor has she presented anything other than conjecture that it would do so in her case. Plainly, Ms. Buechler is asking that we speculate. Her failure to exhaust her administrative remedies is not excused and her state law claims were properly dismissed on summary judgment.[4]

II

We next address the trial court's dismissal of Ms. Buechler's civil rights claim asserted under 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any

---

[4] In a related argument, Ms. Buechler invites us to extend the appearance of fairness doctrine to provide a remedy—because, she contends, had she forced the ARC to convene, the hearing would not have been fair. Under the appearance of fairness doctrine, proceedings before a quasi-judicial tribunal are valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing. *Wash. Med. Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 478, 663 P.2d 457 (1983). The doctrine applies only to quasi-judicial proceedings that actually take place. Ms. Buechler provides no authority or reasoned argument that would make the doctrine applicable here. *See* RAP 10.3(a)(6); *McKee v. Am. Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989) ("We will not consider issues on appeal that . . . are not supported by argument and citation to authority.").

14

> citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress.

A state agency or individual acting in his or her official capacity is not a "person" for purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Ms. Buechler can assert a civil rights claim only against Dean Capelo and Mr. Azurdia in their individual capacities.

Dean Capelo and Mr. Azurdia concede that they were acting under the color of state law. They dispute whether Ms. Buechler is relying on a right secured by the Constitution or federal law. We conclude that we need not resolve the issue of Ms. Buechler's liberty or property interest because her claim was properly dismissed on summary judgment on another basis: she was provided as much due process as the Fourteenth Amendment requires. *Cf. Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978) (resolving a claim on the same grounds).[5]

"'Once it is determined that due process applies, the question remains what process is due.'" *Goss v. Lopez*, 419 U.S. 565, 577, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484

---

[5] Because we affirm on this basis, we likewise do not reach WVC's argument that Dean Capelo and Mr. Azurdia were entitled to qualified immunity.

(1972)). Even where a hearing is required, "the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Id.* at 578-79. The plaintiffs in *Goss* were nine high school students who were suspended from school without the opportunity, either before or after the suspension decision, to respond to the charges against them. The United States Supreme Court held that the responsible school official must listen to a suspended student's version of the events either before suspension or thereafter—depending on the circumstances. *Id.* at 596 (Powell, J., dissenting). The Court explained that the essential requirement was not the manner of hearing the student out so much as a requirement that "in being given an opportunity to explain his version of the facts . . . the student first be told what he is accused of doing and what the basis of the accusation is." *Id.* at 582 (majority). The notice of the charges required by *Goss* was, in the first instance, notice of the substance of the charges, not presentation of the evidence, for *Goss* states that it is only if "he denies the [charges]" that the student is due "an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581.

The reasoning of *Goss* leads inescapably to the conclusion that if an institution bases its discipline solely on facts that are admitted by a student in an initial meeting, no further predeprivation hearing is required. *See Cole v. Newton Special Mun. Separate Sch. Dist.*, 676 F. Supp. 749, 752 (S.D. Miss. 1987) (when a student admits to the conduct giving rise to a suspension the need for a fact-finding hearing is obviated (citing

16

*Montoya v. Sanger Unified Sch. Dist.*, 502 F. Supp. 209 (E.D. Cal. 1980); *Black Coalition v. Portland Sch. Dist. No. 1*, 484 F.2d 1040, 1045 (9th Cir. 1973))), *aff'd*, 853 F.2d 924 (5th Cir. 1988).

That is what happened here—WVC has consistently maintained that Mr. Azurdia's decision was based entirely on matters admitted in Ms. Buechler's statement, which she affirmed in meeting with him. Ms. Buechler argues that Mr. Azurdia drew unwarranted conclusions from her statement and imposed unwarranted discipline, but those objections would be addressed in an appeal from his decision—an appeal that was available to Ms. Buechler but that she declined to pursue. From WVC's perspective there was no need to test Ms. Buechler's own admissions through a predeprivation fact-finding hearing.

Ms. Buechler does not view the federal authority on which we rely as controlling, however. She argues that in her case, the rules set forth in chapter 132W-115 WAC are the Fourteenth Amendment minimums, relying on language in *Ritter v. Board of Commissioners of Adams County Public Hospital District No. 1*, 96 Wn.2d 503, 509, 637 P.2d 940 (1981). In that case, a physician with staff privileges at a public hospital argued that he had an implied contractual interest in continued privileges and thereby a protectable property interest. In the course of rejecting his argument, the *Ritter* court quoted from *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972), which states:

A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

In what proves here to be an unfortunate paraphrase, the *Ritter* court substituted "A due process property interest exists" for the language that precedes "if" in the quotation above. *Ritter*, 96 Wn.2d at 509. From this, Ms. Buechler argues that she has "a due process property interest" in state discipline rules and that those rules—for her—become minimum due process under the federal constitution. The argument confuses apples—a property interest, which is normally created by a state statute or rule,[6] with oranges—the due process required by the Fourteenth Amendment before depriving a citizen of a property interest, which is never created by state statute or rule. The answer to the federal constitutional question of "what process is due" is not found in state law. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). In determining whether Ms. Buechler received the process she was due, we rely exclusively on the requirements of the Fourteenth Amendment. Inasmuch as WVC provided due process, Ms. Buechler's § 1983 claim was properly dismissed.

---

[6] Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

III

Ms. Buechler's third dismissed claim asserted that "WVC's failure to comply with

. . . promises for specific treatment in specific circumstances as outlined in [its student

handbook] violates the Doctrine of *DePhillips v. Zolt Construction Co.*, 136 Wn.2d 26,

35, 959 P.2d 1104, 1109 (1998)." CP at 317. Her lawyer confirmed at oral argument that

her complaint seeks an extension of the principles reviewed in *DePhillips* beyond the

employment context rather than asserting a breach of contract claim.[7]

*DePhillips* examined the conceptual grounding of the cause of action based on a

promise of specific treatment in specific circumstances that was first articulated in

*Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 233, 685 P.2d 1081 (1984), in order to

explain why the six-year statute of limitations for breach of a written contract did not

apply.

The cause of action was recognized as modifying, in appropriate circumstances,

the otherwise terminable at will nature of the employment relationship. Observing that

---

[7] We recognize this as a strategic choice. In proceedings below, WVC pointed out that its publications include the following liquidated damages provision with respect to any breach of contract claim:

> The college's total liability for claims arising from a contractual relationship with the student in any way related to classes or programs shall be limited to the tuition and expenses paid by the student to the college for those classes or programs. In no event shall the college be liable for any special, indirect, incidental or consequential damages, including but not limited to, loss of earnings or profits.

CP at 344 (italics omitted).

19

"the principal, though not exclusive, reason employers issue [employee policy manuals] is to create an atmosphere of fair treatment and job security for their employees," the court held in *Thompson* that "[t]his may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same." 102 Wn.2d at 299-30. The court concluded that "if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship." *Id.* at 230.

The cause of action on a promise of specific treatment in specific circumstances is a direct response to terminable at will employment. The education relationship—here, the postsecondary setting, where a student pays tuition for the promise of academic grades and credit for performance in accordance with course requirements and school policies—does not share the same terminable at will character. The education relationship is primarily contractual in nature. *Marquez v. Univ. of Wash.*, 32 Wn. App. 302, 305, 648 P.2d 94 (1982). The cause of action for specific treatment in specific circumstances is appropriately confined to the terminable at will employment context unless and until our Supreme Court decides otherwise.

20

IV

Finally, Ms. Buechler contends that Judge Allan should have unilaterally recused herself from this matter rather than disclosing her prior associations and inviting the parties to request her recusal.

Ms. Buechler submits that we should review Judge Allan's decision not to recuse herself for abuse of discretion, citing *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 840, 14 P.3d 877 (2000). But in that case, the appellant made a motion asking that the trial judge recuse himself. Here, Judge Allan was never asked. We are at a loss as to how Ms. Buechler is entitled to appeal this issue at all.

RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them. *State v. Guzman Nuñez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012). Nonetheless, because RAP 2.5(a) is discretionary and because we can provide closure on this issue for Judge Allan and the parties, we choose to address it.

Under the Code of Judicial Conduct (CJC), a judge shall disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned. CJC Canon 2.11. Among the circumstances in which a judge should disqualify herself under the CJC are where the judge served as a lawyer in the matter in controversy or served in governmental employment and, in that capacity, participated personally and substantially

21

as a public official concerning the proceeding. CJC Canon 2.11(6)(a), (b). Here, there is no suggestion that Judge Allan had any involvement in this matter. She served as an assistant attorney general assigned to WVC 12 to 20 years before she was assigned Ms. Buechler's case.

Disqualification was not required here. Rather, CJC Canon 2.11 cmt. 5 suggests the appropriate conduct of a judge in Judge Allan's situation:

> A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification.

This is what the judge did. There is no suggestion that she did not disclose all of the relevant information.

Ms. Buechler nonetheless insists that the judge's decision to leave recusal up to the parties put Ms. Buechler in a "Catch-22" circumstance of "either (a) accepting her offer to recuse, and potential later consequences in unrelated matters for having done so; or (b) refusing Judge Allan's offer, and proceeding with a judge who felt it necessary in the first instance to disclose the prior representation relationship." Br. of Appellant at 40. The suggestion that there would be "potential later consequences in unrelated matters" is not only unsubstantiated but unexplained. If the implication is that Judge Allan or her colleagues would retaliate in other matters, then it reflects, in our view, a serious misunderstanding of the motivation of a trial judge who believes a matter is not

disqualifying but makes disclosure in fairness to the parties. We also remind counsel of the obligation not to recklessly impugn the integrity of the court. RPC 8.2(a).

Ms. Buechler requested an award of reasonable attorney fees and expenses on appeal, citing 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b). Because Ms. Buechler is not the prevailing party, her request for an award of fees is denied.

Affirmed.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Culp, J.P.T.

23