# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

EDWARD C. GOKEY,

      Appellant,

      v.

CITY OF BLACK DIAMOND,

      Respondent.

No. 86814-4-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Edward Gokey appeals from a superior court order denying his appeal under the Land Use Petition Act (LUPA), ch. 36.70C RCW, which challenged a decision affirming penalties imposed after Gokey felled "significant trees"[1] without a permit and continued to do so in violation of a stop work order. Because Gokey fails to establish grounds for relief under LUPA, we affirm.

I

According to undisputed facts established by the Certified Board Record, on March 16, 2023, two City of Black Diamond (City) officials, an inspector/code compliance officer and an assistant planner, went to Edward Gokey's Black Diamond property in response to a complaint and observed that seven trees had been cut down without a permit, as required by local ordinance. See Black Diamond Municipal Code (BDMC) 19.30.040(A). The city officials informed Gokey, who was present, that he needed a permit to remove trees and directed him to

---

[1] See Black Diamond Municipal Code (BDMC), § 19.30.030.

cease the tree removal work.  Following a heated exchange with Gokey, the inspector summoned the police.  Gokey told the responding police officer that he " 'd[id]n't have a problem with getting a permit' " or stopping the work until he secured a permit, and he was in the "process" of applying.  The officials took photographs to document the trees that had been cut down, posted a red stop work order on a garage near the area where the tree removals had occurred, and instructed Gokey as to the order.[2]

Within an hour after its officials left Gokey's property, the City received a telephone call indicating that "chainsaws were running again."  On returning to site, the assistant planner observed that at least three additional trees had been cut down.  In his interactions with city employees on the date of the incident and in the days that followed, Gokey provided "conflicting information" about the number and location of trees removed and did not assert that he was removing trees on an emergency basis to address an imminent danger.

On March 20, 2023, the City issued a notice of violation, alleging that Gokey removed a total of ten "significant trees" without a permit, in violation of the permitting requirements of chapter 19.30 BDMC ("Tree Preservation Code"), and violated a stop work order.  The City assessed penalties of $10,500 ($1,000 per unlawfully removed tree and $500 for violation of the stop work order).  See BDMC

---

[2] Gokey's property consists of four separate, adjoining parcels with common landscaping, and no distinguishing markers to identify the property lines.  Each parcel has a residence and its own street address.  The stop work order referenced, and was posted on, the parcel associated with a street address of 25705 Steiert Street, although the felled trees were located on parcels associated with 25706 and 25714 Steiert Street.

8.02.190(A); BDMC 19.30.100(D). The City also required corrective actions of planting a pre-set number of replacement trees for each tree removed, or alternatively, payment into a tree removal mitigation fund, in accordance with City code provisions. See BDMC 19.30.070, .100. When the assistant planner returned to Gokey's property to serve the violation notice, the area had been cleared and graded, removing all evidence of the trees and their condition at the time of removal.

Gokey submitted a written request for a hearing to contest the violation. Gokey also sent an e-mail to the City with an attached permit exemption application. [CP 151] The City's Community Development Director informed Gokey that, although granting an exemption was no longer an option because the trees had already been removed, he could submit an after-the-fact permit and provided instructions for doing so. Gokey did not submit a permit application.

Ten days before the hearing, Gokey submitted a written statement to the hearing examiner, indicating, for the first time, that because the trees were "dangerous and undermined property values" the removal was exempt from permitting requirements under BDMC 19.30.050(A), which applies to the "[e]mergency removal of any hazardous significant trees necessary to remedy an imminent threat to persons or property."

The hearing examiner visited the site, at Gokey's request, convened a hearing, and heard witness testimony on September 18, 2023. During his testimony, Gokey used a hand-drawn map to identify the location of the ten trees

he felled in March 2023 along the southern boundary of his property and other trees on the perimeter of his property that he claimed had been blown down by windstorms in previous years. Gokey admitted that he removed significant trees without a permit, but asserted that no permit was necessary because, among other reasons, the removal was necessary, emergent, and exempt from permitting requirements. Gokey denied violating the stop work order based on a discrepancy between the street address listed on the order and the addresses associated with the parcels where the felled trees were located.

After considering the testimony, documentary evidence, and conditions observed on Gokey's property, the hearing examiner issued a 12-page decision, upholding the City's notice of violation and penalties. The hearing examiner determined that all trees were Douglas Fir and "significant" as defined by the code. And, based on a finding that Gokey presented "[n]o evidence" that the trees "pos[ed] an immediate threat to life or property," the hearing officer concluded that Gokey had not "met his burden of proving that the felled trees were an imminent threat" and his "belief" that the trees had "potential to [someday] cause harm [was] not sufficient to establish their imminent threat." The hearing examiner denied Gokey's subsequent motion for reconsideration.

Gokey filed a LUPA petition in superior court. Gokey challenged the hearing examiner's decision on four grounds under LUPA. See RCW 36.70C.130(1)(b), (c), (d), (f). The superior court denied the petition following a hearing.

Gokey appeals.

4

II

LUPA provides the exclusive means, with limited exceptions, for judicial review of local land use decisions.[3] Cave Props. v. City of Bainbridge Island, 199 Wn. App. 651, 656, 401 P.3d 327 (2017). On review of a superior court's decision under LUPA, we stand in the same position as the superior court and review the same record that was before the hearing examiner. Miller v. City of Sammamish, 9 Wn. App. 2d 861, 870, 447 P.3d 593 (2019); RCW 36.70C.120(1). On appeal, the party who filed the LUPA petition bears the burden to establish that the land use decision was erroneous. Fuller Style, Inc. v. City of Seattle, 11 Wn. App. 2d 501, 507, 454 P.3d 883 (2019). We view the facts and inferences in a light most favorable to the party that prevailed below. Fams. of Manito v. City of Spokane, 172 Wn. App. 727, 739-40, 291 P.3d 930 (2013).

Gokey's arguments focus on four grounds under RCW 36.70C.130(1), which afford relief if the petitioner demonstrates:

> (a)  The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
>
> (b)  The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> . . .

---

[3] Under LUPA, a "Land use decision" includes "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination . . . on . . . [t]he enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property." RCW 36.70C.020(2)(c).

(d)     The land use decision is a clearly erroneous application of the law to the facts;

. . .

(f)  The land use decision violates the constitutional rights of the party seeking relief.[4]

The standards in subsections (a), (b), and (f) are questions of law this court reviews de novo.  Cingular Wireless, LLC v. Thurston County, 131 Wn. App. 756, 768, 129 P.3d 300 (2006).  A "clearly erroneous" determination under subsection (d) requires that we apply the law to facts.  Id.  We may reverse the hearing examiner's decision under subsection (d) if we are "left with a definite and firm conviction that a mistake has been committed," while deferring to the hearing examiner's factual determinations.  Id.

A

Gokey seeks relief under RCW 36.70C.130(1)(a), arguing that the hearing examiner's decision failed to comply with BDMC 2.30.110, which requires decisions of hearing examiners to be supported by findings of fact and conclusions of law.  Specifically, Gokey complains that the hearing examiner's decision includes implicit findings and conclusions that are "incorporated" by reference in the findings of fact and conclusions of law.  But the hearing examiner's detailed decision complies with BDMC 2.30.110(A) as it delineates explicit findings of fact and conclusions of law.  These include express findings on the critical facts that

---

[4] Gokey also identifies RCW 36.70C.130(1)(c) as a basis for relief but because he devotes no portion of his argument to that assignment of error, we need not consider it.  See RAP 10.3(a)(6) (arguments must be supported by citations to legal authority and references to the record).

6

(1) Gokey felled "significant trees" as defined by City ordinance without a permit on March 16, 2023, (2) the City issued and posted a stop work order on the same date, and (3) despite awareness of the stop work order, Gokey cut down additional significant trees. The hearing examiner also specifically concluded that Gokey failed to establish that the asserted exemption applied and thus, upheld the violations and penalties.

The hearings examiner's decision thus sufficiently identifies the factual determinations made and the analysis applied. Gokey identifies no prescribed procedure or process that the hearing examiner failed to follow. And given that Gokey's LUPA petition identified and challenged numerous assertions of fact in the hearing examiner's decision, whether or not they were included in numbered factual findings, he fails to demonstrate that any alleged error was prejudicial.

B

Gokey contends that the hearing examiner either erred in interpreting, or misapplied BDMC 19.30.050(A) by using a "purely objective test" to determine whether the exemption for "[e]mergency removal of any hazardous significant trees necessary to remedy an imminent threat" applied.

First, Gokey points to no inconsistency between the hearing officer's decision or the rationale and the language of the code. Gokey's advocacy for a two-part test that requires consideration of the property owner's personal opinion about the necessity of removing trees is not based on the terms of the exemption provision and is otherwise unsupported by legal authority. We must defer to the

7

hearing examiner's interpretation so long as it is not contrary to the plain language of the code. See Sylvester v. Pierce County, 148 Wn. App. 813, 823, 201 P.3d 381 (2009) ("When we review an asserted error under LUPA, we grant 'such deference as is due the construction of a law by a local jurisdiction with expertise,' so long as that interpretation is not contrary to the statute's plain language.") (quoting RCW 36.70C.130(1)(b)).[5] The evident purpose of the emergency removal exemption under BDMC 19.30.050A is to ensure safety when urgency is required and completing the usual permit process would create a risk to safety. The hearing examiner reasonably construed the provision to require evidence of a current emergency creating a necessity to act without taking the time necessary to secure a permit.

Second, and more importantly, the hearing examiner did not adopt or apply a rule that any particular type of evidence is required to establish that the exemption applies or conclude that a property's owner's opinion is irrelevant. Rather, the hearing examiner was unable to credit Gokey's belated, ad hoc assertion of emergent necessity, when it was uncorroborated by evidence that Gokey referred to, but did not provide, and when weighed against the

_____

[5] Gokey appears to claim that RCW 36.70C.130(1)(b) is at odds with the principles articulated in the United States Supreme Court's recent decision in Loper Bright Enters. v. Raimondo, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024). Loper Bright held that federal courts must exercise independent judgment when determining whether an agency acted within its statutory authority and not simply defer to an agency interpretation of an ambiguous statute. Id. at 412-13. As a decision interpreting a federal statute under the federal Administrative Procedure Act, 5 U.S.C.S. § 551 et seq., Loper Bright has no application here. And, in any event, we do not conclude that BDMC 19.30.150(A) is ambiguous.

circumstances and the other evidence in the record. For example, Gokey did not present an arborist's report to support his claim that the removed trees were hazardous. And while asserting that his tenant and neighbor expressed concern about his trees, he presented no declaration or live testimony to substantiate those concerns. And Gokey's claim of emergent removal had to be weighed against his own admission that the particular trees removed in March 2023 had survived more than forty years of windstorms. We defer to the hearing examiner's assessment of credibility and weight of the evidence. Friends of Cedar Park Neigh. v. City of Seattle, 156 Wn. App. 633, 641-42, 234 P.3d 214 (2010).

Rather than imposing a specific evidentiary standard for the exemption, the hearing examiner simply rejected Gokey's proof of imminent threat as unpersuasive, as he was entitled to do. In other words, given the longstanding trees and lack of evidence of a current emergency, the hearing examiner concluded that Gokey could have obtained a permit without risking imminent danger to safety or property. Gokey fails to establish error in interpreting or applying BDMC 19.30.050(A).

C

On two separate bases, Gokey claims the City's enforcement of its ordinances violated his constitutional rights. See RCW 36.70C.130(1)(f). Gokey contends that the Tree Preservation Code is unconstitutionally vague because it fails to define certain "essential and dispositive" terms. And Gokey asserts that the "regulatory burdens" stemming from the citations, including conditions of

replanting or contributing to a tree removal mitigation fund, amount to an unconstitutional taking under the Fifth Amendment.

Standing under LUPA requires the petitioner to exhaust administrative remedies. RCW 36.70C.060(2)(d). "In order for a litigant to establish exhaustion of administrative remedies, the litigant must first raise the appropriate issues before the agency." Aho Constr. I, Inc. v. City of Moxee, 6 Wn. App.2d 441, 458, 430 P.3d 1131 (2018). Gokey did not assert his constitutional claims when he appealed the notice of violation to the hearing examiner. However, notwithstanding the exhaustion doctrine, Gokey maintains that his claims are not precluded because the hearing examiner lacked authority under the City's general rules for hearing examiners to determine the "validity" of ordinances. See CITY OF BLACK DIAMOND HEARING EXAMINER, RULES OF PRACTICE AND PROCEDURE, § 2.03 (2014). Gokey argues that challenging the citation and penalties on appeal to the hearing examiner on constitutional grounds would have been futile, as those issues were beyond the scope of the hearing examiner's authority.

Exhaustion of administrative remedies advances a number of sound policies: it avoids prematurely interrupting the administrative process, provides for full development of the facts, and gives agencies the opportunity to correct their errors. Buechler v. Wenatchee Valley Coll., 174 Wn. App. 141, 153, 298 P.3d 110 (2013). Yet, an appellant need not exhaust administrative remedies if doing so would be futile. Stafne v. Snohomish County, 174 Wn.2d 24, 34, 271 P.3d 868 (2012). In view of the significant policies favoring the exhaustion requirement, the

futility exception is "narrowly applied." Id. at 34-35. Futility exists in "rare factual situations" and cannot be based on speculation or "subjective belief." Buechler, 174 Wn. App. at 154.

Gokey's claim of futility is speculative. As the City points out, although Gokey purports to assert a facial challenge to the City's ordinance, where a vagueness challenge to a land use regulatory provision does not implicate the First Amendment, the provision is evaluated as applied, not for facial vagueness. Longview Fibre Co. v. Dep.'t of Ecology, 89 Wn. App. 627, 633, 949 P.2d 851 (1998). Likewise, as to the claim of an unconstitutional taking, the cases from other jurisdictions that Gokey relies on addressed the challenged ordinance as applied to the challengers. See F.P. Dev., LLC v. Charter Twp. of Canton, 16 F.4th 198, 208 (6th Cir. 2021); Charter Twp. of Canton v. 44650, Inc., 346 Mich. Ct. App. 290, 326-27, 12 N.W.3d 56 (2023).[6] And, as Gokey acknowledges, the City's hearing examiners are expressly authorized "to hear and decide issues related to a taking of private property for public use without just compensation," and issues related to conditions imposed and exactions required on constitutional or other

---

[6] Also, the substantive decisions in both cases arising out of state and federal courts in Michigan hinged on the failure of the local regulatory body to present sufficient evidence demonstrating that the mitigation measures were roughly proportionate to the impact of the property owners' development. F.P. Dev., 16 F.4th at 207-08; Charter Twp. of Canton, 346 Mich. App. at 327-28. The record here is wholly undeveloped as to nexus and rough proportionality because Gokey failed to raise the claim on appeal before the hearing examiner.

legal grounds. BDMC 2.30.080. In these circumstances, Gokey cannot demonstrate futility and we decline to address his constitutional claims.

III

Finally, the City requests attorney fees on appeal under RCW 4.84.370. RCW 4.84.370(1) states, in relevant part,

> Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision.

(Emphasis added.)

The decision before us on appeal is a code enforcement decision. The City does not contend that its citation is equivalent or "similar" to a decision on a "development permit." Under LUPA, decisions on permit applications and decisions regarding the enforcement of land use ordinances are distinct categories of "[l]and use decision[s]." RCW 36.70C.020(2)(a), (c). The City cites Mower v. King County, 130 Wn. App. 707, 720-21, 125 P.3d 148 (2005), wherein this court awarded attorney fees under RCW 4.84.370 after the County prevailed in a LUPA appeal of a code enforcement decision. But the Mower court did so without addressing whether the decision on appeal fell within the scope of RCW 4.84.370(1). Because the City bases its request on RCW 4.84.370, which does

not authorize attorney fees in an appeal of a code enforcement decision, we deny

the City's request for appellate attorney fees.[7]

     Affirmed.

                                               *Birk, J.*

_____

WE CONCUR:

*Chung, J.*                 *Mann, J.*

_____    _____

---

[7] We also deny Gokey's request to certify this matter to the Washington Supreme Court as provided for in RCW 2.06.030(e) (providing authority for this court to certify matters to the Washington State Supreme Court based on a "direct conflict among prevailing decisions of panels of the court or between decisions of the supreme court").