

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Petition of: | ) | No. 35874-7-III |
| | ) | |
| KITTITAS COUNTY for a Declaratory Order. | ) | |
| | ) | |
| | ) | |
| KITTITAS COUNTY, | ) | |
| | ) | |
| Respondent, | ) | PUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE LIQUOR AND CANNABIS BOARD, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — This case asks whether Washington's Growth Management

Act (GMA), chapter 36.70A RCW, requires the Washington State Liquor and Cannabis

Board (the Board) to defer to local zoning laws when making licensing decisions.  Our

answer is no.  Neither the GMA nor the State's marijuana licensing laws require the

No. 35874-7-III
*In re Petition of Kittitas County for a Declaratory Order*

Board to issue licenses in conformity with local zoning laws. While the Board may consider zoning restrictions in making licensing decisions, doing so is not required under current law.

## BACKGROUND

Washington voters legalized the sale and use of recreational marijuana in 2012. INITIATIVE 502, LAWS OF 2013, ch. 3. The new law created a legal marketplace for marijuana and delegated licensing, regulatory, and oversight powers to the Board. RCW 69.50.325, .331. Under the law, marijuana producers, processors, and retailers must operate under Board-approved licenses. RCW 69.50.325. Board licenses are site-specific, meaning they are valid only if used at the location approved by the Board in a license application. *Id.*

In December 2015, Kittitas County (the County) notified the Board of its objection to a license application for a marijuana producer/processor operation. The objection was based solely on the location of the operation.[1] Marijuana production and processing is permitted in the county only "in certain land use zoning designations" and "under strict conditions." Clerk's Papers (CP) at 31; *see also* Report of Proceedings (RP) (Dec. 22, 2017) at 6-7.

_____

[1] While the County's objection is referenced in subsequent correspondence, Clerk's Papers at 29-30, the actual objection is not part of the record on appeal.

2

The Board granted the license over the County's objection. In correspondence to the County, the Board indicated that it could not base its denial of an application on local zoning laws.

In February 2017, the County petitioned the Board under RCW 34.05.240 for a declaratory order. The County argued the site-specific nature of marijuana licenses means that licensing decisions are subject to local zoning regulations.

In May 2017, the Board rendered a decision on the County's petition after issuing a notice of proceedings and receiving input from numerous cities and counties. Although the County's position garnered significant support from various municipalities and county governments, the Board determined that neither the marijuana licensing statute nor the GMA required its adherence to "all local zoning laws and land use ordinances prior to granting a license." *Id*. at 235.

The County successfully appealed the Board's decision to the Kittitas County Superior Court. In reversing the Board's decision, the superior court ordered the Board to "only approve those licenses which are in compliance with local zoning." *Id*. at 330; *see also* RP (Dec. 22, 2017) at 38.

The Board brings this appeal seeking reversal of the superior court's order.

No. 35874-7-III
*In re Petition of Kittitas County for a Declaratory Order*

ANALYSIS

The Board's appeal comes to us via the Administrative Procedure Act, chapter 34.05 RCW. In this context, we review the Board's decision, not that of the superior court. *Goldsmith v. Dep't of Social & Health Servs.*, 169 Wn. App. 573, 583-84, 280 P.3d 1173 (2012). Because the Board's decision here turns on statutory interpretation, our review is de novo. *State v. Evans*, 177 Wn.2d 186, 191, 298 P.3d 724 (2013). We begin with the statute's plain language, and end our analysis there if the text is unambiguous. *Id*. at 192. In addition, if a statute has been interpreted by state agencies with relevant administrative expertise, we will give that agency's legal interpretation substantial weight. *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008).

*Marijuana licenses and the GMA*

According to the County, the GMA requires the Board to deny marijuana licenses to marijuana producers, processors, and retailers whose site locations are in areas with local zoning restrictions. This argument is based on RCW 36.70A.103, which states:

> **State agencies required to comply with comprehensive plans.**
> State agencies shall comply with the local comprehensive plans and development regulations and amendments thereto adopted pursuant to this chapter except as otherwise provided in RCW 71.09.250 (1) through (3), 71.09.342, and 72.09.333.

4

No. 35874-7-III
*In re Petition of Kittitas County for a Declaratory Order*

> The provisions of chapter 12, Laws of 2001 2nd sp. sess.[2] do not affect the state's authority to site any other essential public facility under RCW 36.70A.200 in conformance with local comprehensive plans and development regulations adopted pursuant to chapter 36.70A RCW.

The County reasons that, because the Board is a state agency, this statute requires it to adhere to local zoning restrictions when issuing site-specific marijuana licenses.

The Board counters that RCW 36.70A.103 applies only to actions taken by a state agency acting in its proprietary capacity as the developer or operator of a public facility site. Because licensing decisions—even if site specific—do not involve a state agency acting in its proprietary capacity, it argues this statute is inapplicable.

The plain language of RCW 36.70A.103 favors the Board's approach. As worded, the statute is concerned with governmental agencies involved in *siting* public facilities. According to the statute, when a governmental agency is involved in siting a public facility, it must follow generally applicable zoning rules, except in certain limited circumstances.[3] While RCW 36.70A.103 requires governmental actors to abide by the same zoning rules as regular citizens, nothing in the statute suggests state agencies must

---

[2] RCW 36.70A.103 was amended in 2001 to include exceptions from local zoning ordinances for construction of sex offender transition facilities and facilities on McNeil Island. LAWS OF 2001, 2d Spec. Sess., ch. 12, § 203.

[3] State agencies are not held to the same standards as private parties with respect to siting designated correctional facilities, as set forth in RCW 71.09.250(1) through (3), RCW 71.09.342, and RCW 72.09.333.

be concerned with local zoning restrictions when engaged in purely governmental functions, such as determining the appropriateness of a state license.

Regulations promulgated by the Department of Commerce support the view that RCW 36.70A.103 is directed at governmental agencies involved in siting public facilities.[4]  Specifically, WAC 365-196-530(2) states:

> The department construes RCW 36.70A.103 to require each state agency to meet local siting and building requirements *when it occupies the position of an applicant proposing development*, except where specific legislation explicitly dictates otherwise.  This means that development of state facilities is subject to local approval procedures and substantive provisions, including zoning, density, setbacks, bulk and height restrictions.

(Emphasis added).  Outside of the siting and development context, the regulations recognize the GMA imposes no strict obligations on state agencies.  Instead, the GMA merely "implies" that governmental agencies "should take into account" growth management programs when engaged in "discretionary decision making." WAC 365-196-530(4).

The Board's decision to issue a marijuana license is not a siting activity. Although the licenses are location-specific, they do not confer final authority to actually open a marijuana site.  The Board's regulations specify a license holder must comply

---

[4] The Department of Commerce is tasked with a limited amount of state-wide GMA rule making.  *See* RCW 36.70A.030(6), .050, .190.

with local laws—including zoning requirements—before going into business. WAC 314-55-020(15).

Because a marijuana license does not authorize the siting of a marijuana business, the Board cannot fail to "comply" with RCW 36.70A.103 merely by conferring marijuana licenses without regard to zoning restrictions. Zoning laws remain in full force regardless of whether a license is issued. The Board's decision to license a business in a zoning-restricted area may mean the license will have little utility.[5] But nothing in the limited nature of the Board's license changes local development plans or undermines the GMA's policy of coordinated development.

*License requirements under the marijuana laws*

The County claims that even if the GMA is inapplicable to the Board's licensing decisions, the state's marijuana laws themselves require the Board to adhere to local zoning rules in issuing licenses. The County points to RCW 69.50.331(7), which requires the Board to notify local governments of marijuana license applications and renewals, and to allow an opportunity for input. In addition, RCW 69.50.331(10) specifies that in making a licensing decision, the Board "must give substantial weight to objections from" local governmental authorities based on concerns regarding "chronic illegal activity."

---

[5] This, of course, depends on whether the license holder can obtain a variance.

7

The County's reliance on the marijuana licensing statute is misplaced. That statute requires only communication with local governments; it does not require compliance with local zoning laws. If the legislature intended to require the Board to adhere to local zoning laws, it would have done so directly. *See* RCW 69.50.331(8)(e). The marijuana licensing statute sets forth numerous circumstances requiring license denial. RCW 69.50.331(1)(b), (2)(b), (8). Noncompliance with local zoning standards is not one of them.

Instead of tethering the Board's licensing decisions to local zoning standards, the legislature has explicitly recognized that the Board's licensing decisions are independent of local zoning restrictions. In 2017, the legislature amended the marijuana laws to address the plight of marijuana licensees who have been unable to open their businesses due to zoning restrictions. LAWS OF 2017, ch. 317, § 1. Normally, a licensee's failure to begin operations within 24 months of licensure will result in license forfeiture. RCW 69.50.325(3)(c)(ii)(B). But under the 2017 amendment, a licensee who is unable to open a business due to zoning restrictions is protected from the forfeiture rule. RCW 69.50.325(3)(c)(v). By adopting protections for licensees who cannot begin operations because of zoning restrictions, the legislature recognized that the Board's licensing decisions are not dependent on zoning regulations. Instead, the legislature's

8

action indicates an understanding that a licensing decision is separate and apart from zoning compliance.[6]

While nothing in the marijuana licensing statute requires the Board to issue licenses in conformance with local zoning restrictions, there is also no prohibition on doing so. Outside a limited set of prohibitive circumstances, RCW 69.50.331(1)(b), (2)(b), and (8), the legislature granted the Board discretionary authority over licensing decisions. RCW 69.50.331(1)(a), (2)(a). In its implementing regulations, the Board has recognized it has "broad discretionary authority to approve or deny a marijuana license." WAC 314-55-050. The Board's regulations set forth a list of nonexclusive factors relevant to marijuana licensing decisions. *Id.* In fact, the final regulatory factor is a broadly worded catchall, providing that the Board may deny a license if it determines "issuance of the license will not be in the best interest of the welfare, health, or safety of the people of the state." WAC 314-55-050(17).

---

[6] The County argues the 2017 amendments favor its claim that the Board is illegally ignoring zoning restrictions in issuing marijuana licenses. According to the County, the legislature amended the marijuana statute out of recognition of the Board's ongoing illegal conduct and in order to grant reprieves to marijuana licensees who receive illegal licenses. We find this analysis unconvincing. If the legislature had thought the Board was illegally ignoring zoning restrictions when conferring licenses, it would have taken direct responsive action. Illegal activity by a governmental agency would be a serious problem. If the legislature had believed the Board was acting illegally, it would have condemned the Board's actions and added zoning restrictions to the list of prohibitions on marijuana licenses under RCW 69.50.331.

It is not for this court to say whether, or to what extent, the Board should consider zoning restrictions in making its discretionary licensing decisions. The Board must treat each license application individually and consider a host of different circumstances in determining whether to grant a license. WAC 314-55-020, -050. Zoning restrictions are just one potential consideration. While there appears to be broad support for imposing zoning restrictions on the Board's licensing authority, this is a matter that must be taken up by the legislative or rule-making process. It is not a matter to be resolved by the judiciary.

## CONCLUSION

We reverse the superior court and affirm the Board's determination that it is not required to deny marijuana license applications based on local zoning restrictions.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Fearing, J.

10