# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ERIC JOHNSON and RICHARD MANKAMYER, | No.  54173-4-II |
| Appellants/Cross Respondents, | |
| v. | |
| WASHINGTON STATE CONSERVATION COMMISSION and the following in their individual and official capacities: JIM KROPF, Chair; DEAN LONGRIE, Vice-Chair; HAROLD CROSE, Commissioner; LARRY COCHRAN, Commissioner; DARYL WILLIAMS, Commissioner; SARAH SPAETH, Commissioner; PERRY BEALE, Commissioner; THOMAS MILLER, Commissioner; Executive Director MARK CLARK; Policy Director RON SHULTZ; JOHN and JANE DOES 1-10, | PUBLISHED OPINION |
| Respondents/Cross Appellants. | |

WORSWICK, J. — Eric Johnson and Richard Mankamyer (collectively, appellants) were

supervisors on the Thurston Conservation District.  The Washington State Conservation

Commission removed both appellants for malfeasance and neglect of duty.  The appellants filed

an action in superior court for declaratory and injunctive relief, and for attorney fees.[1]  The trial

---

[1] The appellants sued numerous individual commissioners and employees as well as the Commission.  We refer to all these defendants as "the Commission."

court entered a summary judgment order ruling that the Commission erred when it held the removal hearing under the Open Public Meetings Act (OPMA)[2] instead of under the Administrative Procedure Act (APA).[3] The court also ruled that neither election statutes nor the State Constitution required the appellants to be removed only by a recall election. The court remanded the case to the Commission for further proceedings, and granted appellants leave to request attorney fees at a later date.

The appellants appeal, arguing that (1) the trial court erred when it granted summary judgment by ruling that removal of an elected supervisor under RCW 89.08.200 does not violate article I, section 33 of the Washington Constitution, (2) the trial court erred when it granted summary judgment by remanding the matter to the Commission, and (3) they are entitled to costs and fees under RAP 18.1, the OPMA, and the APA.

The Commission cross appeals, arguing the trial court erred when it ruled that (4) the Commission erroneously held the removal hearing under the OPMA and not the APA, and (5) the appellants were denied procedural rights and were thereby substantially prejudiced.

We affirm the trial court's rulings that the APA applies to removal hearings for conservation district supervisors, the Commission erred when it held the removal hearing under the OPMA rather than the APA, and the removal of elected conservation district supervisors under RCW 89.08.200 does not violate the Washington Constitution. However, we reverse the trial court's ruling that the appellants were denied procedural rights that resulted in substantial prejudice to the appellants. Accordingly, we vacate the trial court's order remanding the matter

---

[2] Chapter 42.30 RCW.

[3] Chapter 34.05 RCW.

to the Commission because remand would be futile or impracticable. We also deny the appellants' request for attorney fees. Thus, we affirm in part, reverse in part, vacate in part, and deny the appellants' request for attorney fees.

FACTS

Conservation districts are local government entities governed by the Washington State Conservation Commission. RCW 89.08.020. There are 45 conservation districts around the state, including the Thurston Conservation District. RCW 89.08.070. Each conservation district is governed by a board of five supervisors, three of whom are elected and two of whom are appointed by the Commission. RCW 89.08.160, .210, .220. Supervisors serve three year terms. RCW 89.08.200. Supervisors are unpaid, but are entitled to expenses incurred during performance of their duties. RCW 89.08.200.

Eric Johnson was appointed as a supervisor on the Thurston Conservation District in September 2013. Johnson's term as supervisor expired in May 2019.[4] Richard Mankamyer was elected for a term running from May 2017 to May 2020.

In November 2017, the Commission received a complaint regarding the appellants' conduct as Thurston Conservation District supervisors.[5] The Commission informed the appellants that they were being investigated for potential removal from their positions under

---

[4] At the time of the summary judgment motion, another person had been appointed to Johnson's vacant position.

[5] The letter presented to the Commission identified several areas of concern regarding the appellants, including harassment and discrimination of permanent staff, neglect of duties, spreading misinformation, unethical conduct, and a lack of good governance.

RCW 89.08.200.[6] Staff at the Thurston Conservation District also filed complaints against the appellants with the Washington State Human Rights Commission in March 2018. These complaints resulted in the Commission conducting an investigation into the appellants' conduct covering the time period between January 2016 and June 2018.

In a report issued in July 2018, the Commission set out 11 charges against the appellants. The Commission then held a special meeting in August 2018 to decide whether to hold a public hearing to consider the appellants' removal. At that meeting, the Commission voted to hold a hearing under the OPMA to determine the appellants' removal. The appellants requested a hearing under the APA in September 2018.

The Commission responded to the appellants' request, but informed them that it would not conduct the public hearing as an APA adjudication. Instead, the Commission stated that it would hold the removal hearing under the OPMA. The Commission claimed it had the authority to choose not to conduct an adjudicative proceeding under the APA. *See* RCW 34.05.416.

The Commission held the removal hearing over the appellants' objections in February 2019. In a series of prehearing conferences and communications, the appellants and the Commission cooperated in reaching a determination on the procedural and administrative details of the hearing. The appellants were afforded certain procedural rights at the hearing, including representation by counsel, presenting and questioning witnesses, and entering exhibits. At the removal hearing, the Commission voted to remove Johnson and Mankamyer for neglect of duty and malfeasance based on 4 of the 11 charges.

---

[6] RCW 89.08.200 provides the term of office for conservation district supervisors, as well as provisions governing elections, vacancies, quorum rules, compensation, and removal.

The Commission made findings regarding the 4 charges. First, the Commission found neglect of duty by both appellants because they failed to maintain full and accurate records of district business, resulting in a lack of direction for district staff and a lack of clear district records.

Second, the Commission found neglect of duty by both appellants because they delayed approval of timesheets and signing of checks. This resulted in the district incurring late fees on overdue bills and putting district bank account signing authorities at risk.

Third, the Commission found both appellants committed malfeasance by engaging in inappropriate conduct and making inappropriate comments when working with district staff. The harassment affected, interfered, and interrupted the performance of the district. Regarding this charge, the Commission found that the appellants had failed to implement the recommendations of a risk management specialist, which resulted in increases in insurance rates and deductibles for the district.

Fourth, the Commission found Johnson committed malfeasance when he failed to attend a public hearing. Johnson's failure to attend resulted in a lack of a quorum during a budget meeting regarding the district's rates and charges and ultimately resulted in a loss of nearly a third of the district's annual budget.

Meanwhile, the appellants proceeded against the Commission in court. After learning in September 2018 that they would not be receiving a hearing under the APA, the appellants filed a petition for judicial review in Thurston County Superior Court. The appellants sought declaratory and injunctive relief under 42 U.S.C. section 1983 (civil action for deprivation of rights), the APA, and the OPMA. The Commission removed the case to federal court in October

2018. In March 2019, the United States District Court granted the Commission's motion to summarily dismiss the appellants' 42 U.S.C. § 1983 claims, and then dismissed the APA and OPMA claims without prejudice.[7] After the Commission's decision to remove the appellants from the Conservation District, they filed an amended complaint in superior court in April 2019.

The appellants and the Commission then filed cross motions for summary judgment. The trial court granted summary judgment to the appellants, ruling that the hearing was an "adjudicative proceeding" and that the Commission erred when it held the removal hearing under the OPMA rather than the APA. Clerk's Papers (CP) at 130. The court also ruled that the appellants were denied procedural rights which resulted in substantial prejudice. The court ordered that the matter be remanded to the Commission for further proceedings under the APA.[8]

The appellants now appeal the trial court's order of summary judgment and argue that the removal statute, RCW 89.08.200, violates the Washington Constitution as it applies to elected supervisors. The appellants further argue that the trial court's remand of the proceedings to the

---

[7] The district court found that the appellants had no property or liberty interest in "volunteer" positions and that they did not meet their burden of proof to show that they had a due process right in a recall petition. *Johnson v. Wash. Conservation Comm'n*, No. C18-5824 RJB, 2019 WL 1429503, at *6 (W.D. Wash. Mar, 29, 2019).

[8] The trial court's decision was listed in a section of the order on summary judgment entitled "Findings and Conclusions." CP at 130. Because the issue below was a summary judgment motion, findings of fact are not necessary, and are superfluous if made. *Nelson v. Dep't of Labor & Indus.*, 198 Wn. App. 101, 109, 392 P.3d 1138 (2017). Moreover, there were no material issues of fact presented to the trial court. Although designated as "findings," the statements in the order are actually rulings. However, both the appellants and the Commission refer to—and assign error to—the trial court's "findings." We treat these findings as rulings for the purposes of this appeal.

Commission for adjudication under the APA is futile and impracticable. The appellants also request attorney fees on appeal.

The Commission cross appeals. The Commission assigns error to the trial court's finding that the Commission was required to hold removal hearings under the APA and not the OPMA.[9] The Commission argues that its removal procedure did not violate either the APA or the OPMA. The Commission also assigns error to the trial court's finding that the appellants were denied procedural rights.[10] The Commission argues that the appellants had no property or liberty interest in their positions and that, accordingly, the procedure it afforded the appellants was sufficient regardless of whether the hearing was held under the OPMA or the APA. Additionally, the Commission argues that even if the procedure it used was flawed, the appellants were not substantially prejudiced by the procedures used in the removal hearing. S*ee* RCW 34.05.570(1)(d). Finally, the Commission argues that the appellants are not entitled to their requested relief.

## ANALYSIS

### I. CONSTITUTIONALITY OF RCW 89.08.200

The appellants argue that the trial court erred when it ruled that the removal of Mankamyer from his elected position does not violate article I, section 33 of the Washington Constitution. The appellants contend that removing elected conservation district supervisors

---

[9] We consider this "finding" a "ruling" because there was no material question of fact on this issue and this "finding" is an interpretation of the law.

[10] We consider this finding a ruling, also.

No. 54173-4-II

under RCW 89.08.200 violates article I, sections 33 and 34 of the Washington Constitution.[11]

We disagree and hold that RCW 89.08.200 does not conflict with the Washington Constitution.

A.      *Legal Principles*

We review summary judgment decisions de novo.  *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 281, 313 P.3d 395 (2013) (plurality opinion).  Where there is no genuine issue of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law.  *Int'l Marine*, 179 Wn.2d at 281; *Voters Educ. Comm. v. Wash. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 481, 166 P.3d 1174 (2007).  We review the constitutionality of a statute de novo.  *Schroeder v. Weighall*, 179 Wn.2d 566, 571, 316 P.3d 482 (2014).

"'[A] statute is presumed to be constitutional and the party challenging its constitutionality bears the burden of proving its unconstitutionality beyond a reasonable doubt.'" *Voters Educ. Comm.*, 161 Wn.2d at 481 (internal quotation marks omitted) (quoting *State v. Hughes*, 154 Wn.2d 118, 132, 110 P.3d 192 (2005)).  Where possible, we have a duty to construe constitutional construction of statutes.  *Campbell v. Tacoma Pub. Sch.*, 192 Wn. App. 874, 883, 370 P.3d 33 (2016).

Article I section 33 of the Washington Constitution states:

Every elective public officer in the state of Washington expect [except] judges of courts of record is subject to recall and discharge by the legal voters of the state, . . . whenever a petition demanding his recall, reciting that such officer has committed some act or acts of malfeasance or misfeasance while in office, . . . is filed with the officer with whom petition for nomination, or certificate for nomination, to such

---

[11] At oral argument, the appellants appeared to move away from this position and argued that because RCW 89.08.200 conflicts with article V section 3 of the Washington Constitution, the only "logical option" remaining for removing an elected supervisor was the recall.  We address the argument presented in their brief.

8

> office must be filed under the laws of this state, and the same officer shall call a special election as provided by the general election laws of this state, and the result determined as therein provided.

(Alteration in original.)  The next section, article I, section 34, states that "[t]he legislature shall pass the necessary laws to carry out the provisions of section thirty-three (33) of this article."  The legislature passed these laws, which are codified in RCW 29A.56.110.  This statute provides the procedures for recall of "*any* elective public officer of the state or of such political subdivision."  RCW 29A56.110 (emphasis added).

Under article V, section 3 of the Washington Constitution, "[a]ll officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law."  Only "[t]he governor and other state and judicial officers" are liable to impeachment.  WASH CONST. art. V, § 2.  Neither party here contends that conservation district supervisors are liable to impeachment.

The legislature has passed laws that provide for the removal of elected officials.  For example, a public officer may be required to forfeit his or her office if convicted of a "felony or malfeasance."  RCW 9.92.120.  The legislature also provides a list of when an elective office "shall become vacant," which includes removal, conviction of a felony, refusal to take his or her oath of office, or on the decision of a competent tribunal voiding the election or appointment, or a judgment determining the incumbent has breached the condition of his or her official bond.  RCW 42.12.010(3), (5)-(8).  Conservation district supervisors are specifically governed under RCW 89.08.200, which states that "[a] supervisor may be removed by the state conservation commission upon notice and hearing, for neglect of duty or malfeasance in office, but for no other reason."

B. *RCW 89.08.200 and Washington Constitution Article I, §§ 33-34*

The appellants argue that removing elected conservation district supervisors under RCW 89.08.200 violates article I, sections 33 and 34 of the Washington Constitution. They argue that recall is the sole method of removing an elected officer. We disagree.

The appellants base their argument that the supervisor removal statute is invalidated by the constitution on *State ex rel. Lynch v. Fairley*, 76 Wash. 332, 333, 136 P. 374 (1913). In *Fairley*, the City of Spokane's city charter contained a recall provision. 76 Wash. at 333. Our Supreme Court held that Spokane's recall provision conflicted with sections 33 and 34 of article I of the state constitution. *Fairley*, 76 Wash. at 334. The court held that the recall procedure under the city charter, which included the form of petitions, allegations, and number of signatures required to hold a recall, were superseded by the then-new constitutional amendments in sections 33 and 34. *Fairley*, 76 Wash. at 333-34. The court explained that the sections "constitute a general law upon the subject of recall of [the] city as well as other officers, the requirements of which must be conformed with as a prerequisite to the holding of a recall election." *Fairley*, 76 Wash. at 334.

This case is distinguishable. First, RCW 89.08.200 is not a recall provision like those in *Fairley*, but a provision to remove supervisors by other means. Second, the statute is not a city ordinance put in place by a charter, but a statute voted on by the legislature and approved by the governor, as contemplated by the constitution. Finally, the statute includes no language that conflicts with sections 33 and 34 of article I of the state constitution. That is, the statute contains no language that prevents a recall of supervisors under the "general law upon the subject of recall" as laid out in the constitution. *Fairley*, 76 Wash. at 334. The statute does not provide

that the Commission's removal procedure under the statute is the sole method of removing supervisors.  Indeed, there is no statute that prevents the people from petitioning and carrying out a recall of conservation district supervisors.[12]  Thus, *Fairley* is not controlling.

Next, the appellants argue that RCW 89.08.200 violates article I, sections 33 and 34 of our constitution because the constitution includes a mandatory requirement for recall while the statute is merely permissive.  We disagree.

Article I, section 33 of the constitution states that elected officers are "*subject to* recall and discharge" by the voters, and that upon a recall petition the officer responsible for nomination "shall call a special election."  (Emphasis added.)  Section 34 then states that "the legislature shall pass the necessary laws to carry out the provisions of section thirty-three (33)."  Meanwhile, RCW 89.08.200 states that a supervisor "*may be* removed" by the Commission upon notice and hearing.  (Emphasis added.)

The appellants would have this court infer that the word "shall" from the phrases "shall call a special election" and "shall pass necessary laws" creates a mandatory obligation to remove elected officers by recall.  Br. of Appellant at 13.  They argue that this overrides the permissive "may" from RCW 89.08.200.  Br. of Appellant at 13.  We reject this interpretation of our constitution.

---

[12] The appellants also argue that the Commission ignores the fact that a recall petition had been filed against Johnson and Mankamyer with the Thurston County Auditor.  The recall petition was filed in July 2018.  The record on appeal is silent as to any further action taken by the Thurston County Auditor on the recall; nothing in the record on appeal suggests a recall vote took place.  But the appellants do not appeal the fact that no action was taken on the recall or at least that the recall did not take place before the Commission's hearing.  Instead, they appeal the Commission's decision to remove Johnson and Mankamyer and the trial court's remand for proceedings under the APA.

The "shall" in section 33 does not mandate a recall to remove elected officers, but instead mandates that election officers call a special election *after a recall petition is filed.* Elected officers are only "subject to" recall; this language is permissive. WASH. CONST. art. I, § 33. There is nothing in section 33 that says an officer "shall be" recalled or that recall shall be the only means of removing an elected officer. Instead, the "shall" from section 33 precedes "call a special election," thus mandating the election officer in the relevant political subdivision to call a special election after a recall petition is filed. Likewise, the "shall" in section 34 mandates that the *legislature* must pass the necessary laws to carry out provisions of section 33. The legislature has done this, and recalls are governed by RCW 29A.56.110.[13] The "shall" contained in section 34 mandates only that the legislature pass necessary laws, and does not modify the clear language of section 33. Accordingly, neither section 33 nor section 34 mandates recall as the sole means of removal for elected officers.

Furthermore, there are other ways in which officers may be removed apart from recall. Some officers are subject to impeachment. WASH. CONST. art. V, § 1. The governor, for example, is subject to both impeachment and recall. WASH. CONST. art. V, § 2; *see also In re Recall of Inslee*, 194 Wn.2d 563, 567, 451 P.3d 305 (2019). The constitution also provides that officers not subject to impeachment may be removed for "misconduct or malfeasance in office." WASH. CONST. art. V, § 3. All portions of the constitution must be read in harmony. *State ex rel. Wolfe v. Parmenter*, 50 Wash. 164, 175, 96 P. 1047 (1908); *Chlopeck Fish Co. v. City of*

---

[13] Nowhere in chapter 29A.56 RCW does the legislature provide recall as the sole means of removing elected officers.

*Seattle*, 64 Wash. 315, 322-23, 117 P. 232 (1911). The appellants' argument that recall is the only means to remove an elected officer ignores the language of article V, sections 1, 2, and 3.

Elected officers may also be removed from office upon conviction of a felony. RCW 9.92.120; RCW 42.12.010(5). Indeed, the legislature has contemplated and codified multiple ways in which an elected office becomes vacant in RCW 42.12.010. These include a judicial decision voiding the election results or appointment. RCW 42.12.010(7); *see also* RCW 29A.68.020. Finally, this state has a tradition of the writ of quo warranto being used to challenge the entitlement of a person to hold office. *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 893, 969 P.2d 64 (1998); *State ex rel. Smith v. Mills*, 2 Wash. 566, 568, 27 P. 560 (1891); RCW 7.56.010.[14]

We hold that RCW 89.08.200 does not violate article I, sections 33 and 34 of the state constitution. Accordingly, we hold that recall is not the sole means of removing an elected officer from his or her position.

C.    *RCW 89.08.200 and Washington Constitution Article V, § 3*

The appellants also argue that RCW 89.08.200 conflicts with article V, section 3 of the state constitution because "neglect of duty" under the statute is "neither misconduct nor malfeasance," which are the only constitutionally permitted reasons for removing a supervisor. Reply Br. of Appellant at 1. The Commission argues that it has the authority to remove supervisors under RCW 89.08.200 because article V, section 3 of the Washington Constitution

---

[14] The appellants argue that *Quick-Ruben* is inapplicable because there the proponent of the writ was not successful in his action. 136 Wn.2d at 905-06. However, the *Quick-Ruben* court clearly explained that a writ of quo warranto is "designed to challenge the entitlement of a person to hold office" and that "actions for quo warranto are also part of our legal tradition." 136 Wn.2d at 893.

reserves the authority to the legislature to determine how to remove certain officers, and that the legislature provided for the removal of conservation district supervisors in RCW 89.08.200. We agree with the Commission and hold that RCW 89.08.200 grants the Commission the authority to remove conservation district supervisors consistent with article V, section 3 of the Washington Constitution.

We presume statutes to be constitutional. *Voters Educ. Comm.*, 161 Wn.2d at 481. Where possible, we have a duty to construe constitutional construction of statutes. *Campbell*, 192 Wn. App. at 883. We interpret the meaning of a statute de novo and defer to an agency's interpretation of an ambiguous statute when it is within that agency's expertise, provided that statute is ambiguous. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004).

The application and constitutionality of RCW 89.08.200 is a matter of first impression before this court. Under RCW 89.08.200, which governs the terms of district supervisors, "[a] supervisor may be removed by the state conservation commission upon notice and hearing, for neglect of duty or malfeasance in office, but for no other reason."[15]

---

[15] The Commission defines "neglect of duty" as

> failure by a supervisor or supervisors to perform mandatory duties. Such duties include, but are not limited to:
> (a) Compliance with laws and rules imposed by local, state, and federal government entities;
> (b) Attendance at a sufficient number of board meetings so as to not impede the work of the conservation district;
> (c) Maintaining a full and accurate record of district business;
> (d) Securing of surety bonds for board officers and employees;
> (e) Carrying out an annual financial audit;
> (f) Providing for keeping current a comprehensive long-range program;

1. *Interpretation of "Neglect of Duty" and "Misconduct"*

The appellants argue that RCW 89.08.200 violates article V, section 3 of our state constitution because "[n]eglect of duty" under RCW 89.08.200 is "neither misconduct nor malfeasance." Reply Br. of Appellant at 1. We disagree.

Under article V, section 3, "[a]ll officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law." WASH. CONST. art. V, § 3. Our courts have not defined "misconduct or malfeasance" for the purpose of this section. By its own terms, however, section 3 permits the legislature to define the standards of removal in accord with this provision.

The legislature's provision for removing supervisors in RCW 89.08.200 does not contravene the provisions of article V, section 3 of the constitution. Although "misconduct" is undefined, the plain meaning of "neglect of duty" is not out of step with the plain meaning of "misconduct." There is no conflicting definition of "misconduct" in Washington law as it applies to removing elected or appointed officers. Accordingly, we construe "neglect of duty" to be a specific type of "misconduct" for the purposes of removing conservation district

---

(g) Providing for preparation of an annual work plan;
(h) Providing for informing the general public, agencies, and occupiers of lands within the conservation district of conservation district plans and programs;
(i) Providing for including affected community members in regard to current and proposed plans and programs; and
(j) Providing for the submission of the conservation district's proposed long-range program and annual work plan to the conservation commission.

WAC 135-110-110. The Commission defines "malfeasance" as "wrongful conduct that affects, interrupts, or interferes with the performance of a supervisor's official duty." WAC 135-110-110. Neither Title 89 nor the Commission's regulations define "misconduct."

supervisors. In the same way, "malfeasance"—otherwise undefined for the purposes of Title 89—also aligns with the wording of the constitution. Thus, RCW 89.08.200 does not conflict with the constitution as it relates to appointed or elected officials.

The appellants argue that in *State ex rel. Howlett v. Cheetham*, 19 Wash. 330, 332, 53 P. 349 (1898), our Supreme Court distinguished neglect of duty from misconduct and malfeasance. It did not. Indeed, the *Howlett* court held that the governor *had the authority* to remove public officer without recall and stated the governor properly removed the officer for "misconduct or malfeasance." *Howlett*, 19 Wash. at 333. The court did not define "misconduct" and never mentioned "neglect of duty."

The remaining cases the appellants rely on are not apt. The appellants rely on the Wisconsin Supreme Court case *State ex rel. Gill v. Common Council of Watertown*, 9 Wis. 254, 257 (1859). We generally do not rely on cases from other jurisdictions when interpreting our own statutes. *Broughton Lumber Co. v. BNSF Ry. Co.*, 174 Wn.2d 619, 638, 278 P.3d 173 (2012). Moreover, *Gill* is not helpful.

In *Gill*, the court interpreted an 1857 Wisconsin statute that governed the removal of a superintendent of schools by the common council of the City of Watertown for "neglect" and other charges. *Gill*, 9 Wis. at 257, 259. The court did not distinguish "neglect" from "misconduct," but instead explained that neglect of a "formal duty" was different from the "due cause" required to remove an officer under Wisconsin law at the time. *Gill*, 9 Wis. at 256, 259-60, 262. The court did not interpret "neglect" or "neglect of duty" under any section of the Wisconsin (or Washington) constitution or otherwise compare it to "misconduct." A Wisconsin case interpreting different language under dissimilar statutes does not enlighten us.

16

The appellants also argue that the Ninth Circuit Court of Appeals distinguished between neglect of duty and misconduct in *Simon v. Califano*, 593 F.2d 121, 123 (1979). *Califano* was a retirement insurance benefits case under the Social Security Act, chapter 42 U.S.C. 593 F.2d at 122. There, the court examined whether negligence amounted to "affirmative misconduct" as part of a test for whether equitable estoppel could be applied against the government. *Simon*, 593 F.2d at 123. *Simon* had nothing to do with neglect of duty or misconduct as it applies to removal from office under state law.

Accordingly, "neglect of duty" in the RCW 89.08.200 aligns with "misconduct" under the constitution.[16] Likewise, "malfeasance" in the statute does not conflict with "malfeasance" in the constitution.

2. *Removal of Certain Officers Reserved to the Legislature*

The Commission quotes *Howlett* to argue that the constitution "left it entirely to the legislature" how to remove officers under article V, section 3. Br. of Resp't at 14 (quoting *Howlett*, 19 Wash. at 332). We agree.

In *Howlett*, our Supreme Court held that the governor had the authority to remove a land commissioner without recall, citing the rule from the constitution that the commissioner could be removed for "misconduct or malfeasance," which the governor had found. *Howlett*, 19 Wash. at 333. The court made no effort to define "misconduct," but instead explained that removal

---

[16] Although we hold that neglect of duty does not conflict with misconduct for the purposes of article V section 3, we also note that the Commission also found *malfeasance* against both supervisors. The Commission found that both appellants committed malfeasance by engaging in inappropriate conduct and making inappropriate comments when working with district staff. The Commission also found that Johnson committed malfeasance when he failed to attend a public hearing.

without recall "'in such manner as may be provided by law'" meant that "[t]he constitution left it entirely to the legislature." *Howlett*, 19 Wash. at 332 (quoting WASH. CONST. art. V, § 3). This decision from *Howlett* is in accord with our Supreme Court's later statement in *Municipal Court of Seattle ex rel. Tuberg v. Beighle*, 96 Wn.2d 753, 756, 638 P.2d 1225 (1982), that the legislature "may provide for removal of public officers without contravening the provisions of article [V], section 3."

We follow *Howlett* and *Beighle*: the state constitution "left it entirely to the legislature" to provide a method of removal other than recall for conservation district supervisors and the legislature did so provide. *Howlett*, 19 Wash. at 332. The statutory provisions of RCW 89.08.200 define a method for removal that is consistent with both article V, section 3 and *Howlett*. Accordingly, the Commission has the authority to remove supervisors without recall based on the law provided by the legislature (RCW 89.08.200), so long as the Commission finds misconduct or malfeasance in accordance with article V, section 3.

Recall is not the sole means of removing an elected officer from office. The state constitution does not invalidate RCW 89.08.200: the two should be read in harmony. Thus, the statute grants the Commission the authority to remove supervisors without a recall under article V, section 3. Accordingly, we hold that the trial court did not err when it ruled that Mankamyer's removal did not violate the Washington Constitution.

II. PROPRIETY OF REMOVAL HEARINGS UNDER THE OPEN PUBLIC MEETINGS ACT

In its cross appeal, the Commission argues that the trial court erred by ruling that the Commission improperly held the removal hearing under the OPMA. The Commission also argues that the trial court erred when it ruled that the appellants were denied procedural rights,

and that this denial substantially prejudiced them. We hold that the removal hearing was improperly held under the OPMA, but that despite this error, the appellants were not substantially prejudiced.

A.      *Legal Principles*

Our fundamental goal when interpreting a statute is to determine and give effect to the legislature's intent. *Columbia Riverkeeper v. Port of Vancouver*, 188 Wn.2d 421, 435, 395 P.3d 1031 (2017). When interpreting a statute, we determine legislative intent from the plain language and ordinary meaning of the statute. *City of Spokane v. County of Spokane*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006). Where a statute's language is plain and unambiguous, our inquiry ends. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). Where possible, we read statutes to "'achieve a harmonious total statutory scheme.'" *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 588, 192 P.3d 306 (2008) (quoting *Echo Bay Cmty. Ass'n v. Dep't of Nat. Resources*, 139 Wn. App. 321, 327, 160 P.3d 1083 (2007)). We review issues of statutory interpretation de novo. *Fortgang v. Woodland Park Zoo*, 187 Wn.2d 509, 518, 387 P.3d 690 (2017).

The APA applies to state agencies. RCW 34.05.030(5). The Commission is a state agency under RCW 34.05.010(2). Agencies excluded from the APA are listed in RCW 34.05.030; the Commission is not listed. *See* RCW 34.05.030. Thus, the APA applies to the Commission.

The APA establishes the means of judicial review of agency action. RCW 34.05.510. The APA defines "agency action" as "licensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the

19

granting or withholding of benefits." RCW 34.05.010(3). The APA defines an "adjudicative proceeding" as "a proceeding before an agency in which an opportunity for hearing before that agency is required by statute or constitutional right *before or after the entry of an order* by the agency." RCW 34.05.010(1) (emphasis added).

The APA provides circumstances where we may grant relief when reviewing agency action. RCW 34.05.570. When reviewing agency orders in adjudicative proceedings, this court

> shall grant relief from an agency order . . . only if it determines that:
>  . . . .
>      (b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
>      (c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow prescribed procedure; [or]
>      (d) The agency has erroneously interpreted or applied the law.

RCW 34.05.570(3). Importantly, we grant relief only if the party seeking such relief has been substantially prejudiced. RCW 34.05.570(1)(d); *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 217, 173 P.3d 885 (2007). However, RCW 34.05.574 "gives a court discretion to fashion a remedy that requires an agency to comply with the law." *Boeing Co. v. Gelman*, 102 Wn. App. 862, 871, 10 P.3d 475 (2000).

We review agency action that is not rulemaking or an adjudication as "other agency action" under RCW 34.05.570(4):

> Relief for persons aggrieved by the performance of an agency action, including the exercise of discretion, or an action under (b) of this subsection can be granted only if the court determines that the action is:
>      (i) Unconstitutional;
>      (ii) Outside the statutory authority of the agency or the authority conferred by a provision of law; [or]
>      (iii) Arbitrary or capricious.

RCW 34.05.570(4)(c).

With limited exceptions, adjudicative proceedings are governed by the APA. RCW

34.05.410. When an agency receives an application for an adjudicative proceeding,

> an agency shall proceed as follows:
> (1) . . . within ninety days after receipt of the application . . . the agency shall do one of the following:
> (a) Approve or deny the application, in whole or in part, on the basis of brief or emergency adjudicative proceedings, if those proceedings are available under this chapter for disposition of the matter;
> (b) Commence an adjudicative proceeding in accordance with this chapter; or
> (c) Dispose of the application in accordance with RCW 34.05.416.

RCW 34.05.419(1). To dispose of the application, the agency must decide not to conduct an

adjudicative proceeding, then "shall furnish the applicant with a copy of its decision in writing."

RCW 34.05.416.

The OPMA applies to governing bodies. *See* RCW 42.30.020, .030, .110. Under the

OPMA, a "governing body" includes "commission[s]" and any part of an agency that conducts

hearings, or takes testimony or public comment. RCW 42.30.020(2). Thus, the Commission is a

governing body. Under the OPMA, governing bodies may hold an "executive session during a

regular or special meeting . . . [t]o receive and evaluate complaints or charges brought against a

public officer or employee." RCW 42.30.110(1)(f). The OPMA then requires that any such

hearing be made open to the public upon request. RCW 42.30.110(1)(f). The only other

mention of "hearing" in the OPMA is a section which grants governing bodies the ability to grant

a continuance. RCW 42.30.100. If any provision of the OPMA conflicts with the provisions of

any other statute, the OPMA controls, *unless the matter is governed by the APA*. RCW

42.30.140(3).

The Commission is also governed by chapter 89.08 RCW, Conservation Districts. RCW 89.08.030. And as discussed above, a conservation district supervisor "may be removed by the state conservation commission upon notice and hearing, for neglect of duty or malfeasance in office, but for no other reason." RCW 89.08.200.

B.      *Statutory Scheme for Removal Proceedings*

The Commission argues that the trial court erred when it determined that the Commission improperly held the removal hearing under the OPMA. The Commission argues that it had the authority under RCW 34.05.416 to elect not to hold an adjudicative hearing. We disagree.

We review agency orders in an adjudicative proceeding under the APA. RCW 34.05.570(3). We may grant relief if "the agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure . . . [or] [t]he agency has erroneously interpreted or applied the law." RCW 34.05.570(3)(c)-(d).

1. *Agency Action Under Review*

As a preliminary matter, the Commission argues that its decision not to hold an adjudication under the APA was "other agency action." Br. of Resp't at 10. We disagree.

The Commission argues we review the Commission's action as "other agency action" under RCW 34.05.50, claiming that the agency action on review is the Commission's "choice of procedure." Br of Resp't at 10. However, this argument is based on the presumption that the Commission had the choice to hold the hearing outside the authority of the APA. It did not.

The agency action on review here is the Commission's interpretation of the APA, specifically, the Commission's interpretation that RCW 34.05.416 gives the Commission the choice to not hold adjudicative proceedings under the APA. We review an agency's

22

interpretation of a statute de novo. *In re Kittitas County for a Declaratory Order*, 8 Wn. App. 2d 585, 588-89, 438 P.3d 1199, *review denied*, 193 Wn.2d 1032 (2019). When reviewing an agency decision, we stand in the same position as the trial court. *Alpha Kappa Lambda Fraternity v. Wash. State Univ.*, 152 Wn. App. 401, 413, 216 P.3d 451 (2009). Accordingly, we review the Commission's decision and not the superior court's ruling. *Alpha Kappa Lambda*, 152 Wn. App. at 413. "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). Thus, to prevail on review, the appellants must show that (1) the agency did not follow the correct procedure, and (2) that the irregularity substantially prejudiced the appellants. *Alpha Kappa Lambda*, 152 Wn. App. at 414; RCW 34.05.570(1)(d), (3).

2. *Procedural Error*

The appellants argue that the Commission's decision to conduct an adjudicative proceeding under the OPMA rather than the APA violated RCW 42.30.140(3). The Commission argues that its decision whether to hold an adjudicative proceeding under the APA is discretionary. We agree with the appellants.

Under APA requirements in RCW 34.05.419, "Agency action on applications for adjudication," when an agency receives an application for an adjudicative proceeding the agency has three options:

> (a) Approve or deny the application, in whole or in part, on the basis of brief or emergency adjudicative proceedings, if those proceedings are available under this chapter for disposition of the matter;
> (b) Commence an adjudicative proceeding in accordance with this chapter; or
> (c) Dispose of the application in accordance with RCW 34.05.416.

RCW 34.05.419(1).  To dispose of the application under RCW 34.05.419(1)(c), the agency must first decide not to conduct an adjudicative proceeding, then it "shall furnish the applicant with a copy of its decision in writing."  RCW 34.05.416.

In July 2018, the Commission set out 11 charges against the appellants.  The Commission then held a special meeting in August 2018 to decide whether to hold a public hearing to consider the appellants' removal.  The appellants requested a hearing under the APA in September 2018.

Reading the APA in isolation, the Commission did have a choice under the APA of whether to hold a hearing.  Under RCW 34.05.419, the Commission could have summarily denied the application (and given the appellants notice under RCW 34.05.416) or held a hearing under the APA.

But this reading of the APA ignores the conservation district supervisor removal statute, which requires supervisors be removed "upon notice and hearing."  RCW 89.08.200.  Reading these statutes harmoniously, RCW 89.08.200 limits the Commission's choice to deny the application if it attempts to remove a supervisor.  *Am. Legion*, 164 Wn.2d at 588.  Because the APA applies to the Commission, it is bound to follow the APA, as well as RCW 89.08.200.  *See* RCW 34.05.030.  It is outside the Commission's authority to hold an adjudication outside of the APA because of the unambiguous language of RCW 34.05.419(1).  Thus, when the APA and removal statute are read together, the Commission has no choice: to remove a supervisor it must hold an adjudicative hearing under the APA.

The Commission responded to the appellants' request and informed the appellants that it would not conduct the public hearing as an APA adjudication.  This was in accordance with

24

RCW 34.05.416, but in violation of the removal statute. To remove the appellants, the only alternative was for the Commission to commence an adjudicative proceeding under RCW 34.05.419(1)(b). It did not, and instead held the public hearing outside the authority of the APA. As a result, the Commission ignored the interrelationship of RCW 34.05.416 (governing a decision not to adjudicate), RCW 34.05.419 (agency action on applications for adjudication), and RCW 89.08.200 (the removal statute). The Commission misapplied RCW 34.05.416 when it determined the statute gave it the authority to hold a public hearing under the OPMA.

Just because the OPMA allows agencies to hold hearings does not mean that the hearing is exempt from the APA. *See* RCW 42.30.110. Indeed, the legislature recognized this when drafting the OPMA, and mandated that if any provision of the OPMA conflicts with the provisions of any other statute, the OPMA controls, *unless the matter is governed by the APA*. RCW 42.30.140(3). Therefore, reading the OPMA and APA harmoniously, there is no conflict between the statutes and the APA must be applied. *Am. Legion*, 164 Wn.2d at 588. Accordingly, we hold that the Commission did not have the discretion to hold the hearing under the OPMA.

3. *Substantial Prejudice*

The Commission argues that the appellants were not substantially prejudiced by the Commission holding the hearing under the OPMA because the appellants were given sufficient process, and therefore, the appellants are not entitled to relief. We agree.

We grant relief when judicial review is sought under the APA only if the party seeking relief has been substantially prejudiced. RCW 34.05.570(1)(d); *Densley*, 162 Wn.2d at 217. "The party seeking relief bears the burden of proof." *Densley*, 162 Wn.2d at 217 (citing RCW

34.05.570(1)(a)). However, RCW 34.05.574 "gives a court discretion to fashion a remedy that requires an agency to comply with the law." *Boeing*, 102 Wn. App. at 871.

Under the APA, the rights of parties in adjudicative proceedings are governed by RCW 34.05.446 (subpoenas, discovery, and protective orders); 34.05.449 (procedure at hearings); and 34.05.452 (rules of evidence—cross-examination). The presiding officer at a hearing "*may* issue subpoenas" and "*may* condition use of discovery on a showing of necessity and unavailability by other means." RCW 34.05.446(1), (3) (emphasis added).

Here, the appellants were afforded certain procedural rights at the hearing, including representation by counsel, presenting and questioning witnesses, and entering exhibits. In a series of prehearing conferences and communications, the appellants and the Commission cooperated in reaching a determination on the procedural and administrative details of the hearing.

The appellants argue that they were prejudiced by their inability to engage in discovery and subpoena witnesses as authorized by the APA. The appellants do not argue that they were denied any other rights during the hearing that they may have otherwise been accorded under the APA.

The two types of procedures the appellants claim they were entitled to are permissive: there is no attempt to show that the presiding officer would have issued subpoenas or granted any requested discovery. *See* RCW 34.05.446(1), (3). Additionally, the appellants fail to explain what discovery they wished to procure, or what testimony they wished to present. Moreover, they fail to show how such discovery or testimony might have changed the outcome of the removal hearing. Accordingly, appellants have failed to meet their burden to show that they

were substantially prejudiced by any lack of procedure accorded to them at the removal hearing.[17]

The appellants here were not substantially prejudiced for the purposes of judicial review under the APA, and thus not entitled to relief.[18] However, as explained above, RCW 89.08.200 and the APA require that removals of conservation district supervisors must take place as adjudicative hearings under the APA. Thus, because it is in the public interest and despite the lack of prejudice to the appellants, we hold that the Commission is required to follow the APA when conducting removal hearings, and that it cannot choose its own procedures. Accordingly, we hold that the trial court did not err when it ruled that the Commission erred when it held the removal hearing under the OPMA and not the APA.

### III. FUTILITY OF REMAND

Both parties appeal the trial court's remand of this case to the Commission for further proceedings. The appellants argue that the trial court's remand was impracticable, futile, and unfair. We agree.

When examining matters within an agency's discretion, we "shall remand to the agency . . . unless remand is impracticable or would cause unnecessary delay." RCW 34.05.574(1). We

---

[17] Although the appellants here have failed to meet their burden to show substantial prejudice, it is unclear from the record on appeal whether the appellants were accorded the full amount of procedure the legislature intended to grant in administrative proceedings under the APA. RCW 34.05.446, .449, .452. Our decision should not be interpreted to mean that a hearing under the OPMA satisfies the requirements of an adjudicative hearing under the APA. Agencies do not have the authority to choose" to hold adjudicative-style hearings under the OPMA when an adjudication is mandated by the APA.

[18] Because we hold that the appellants are unable to show substantial prejudice, we do not consider the Commission's argument that the appellants have no constitutionally protected liberty or property interests in their unpaid positions.

may relieve a party of the requirement to exhaust administrative remedies if "[t]he remedies would be patently inadequate [or] [t]he exhaustion of remedies would be futile." RCW 34.05.534(3)(a)-(b). We may excuse exhaustion of administrative remedies as futile when "'the available administrative remedies are inadequate, or if they are vain and useless.'" *Buechler v. Wenatchee Valley Coll.*, 174 Wn. App. 141, 154, 298 P.3d 110 (2013) (internal quotation marks omitted) (quoting *Orion Corp. v. State*, 103 Wn.2d 441, 458, 693 P.2d 1369 (1985). Futility is a question for the court. *Buechler*, 174 Wn. App. at 154.

The relief sought by appellants in their complaint was declaratory and injunctive.[19] They sought a declaration that the Commission violated the APA and the OPMA and sought full adjudicative hearings under the APA. Johnson's term as supervisor expired in May 2019. Mankamyer's term expired in May 2020. Any remand to the agency for removal proceedings under the APA would be useless because neither appellant has a remaining term to finish out. Accordingly, we hold that remand would be futile and impracticable.[20]

## IV. ATTORNEY FEES

The appellants argue that they are entitled to costs and attorney fees under both the APA (RCW 34.05.574) and the OPMA (RCW 42.30.120(4)). We disagree.

Under the APA, "[t]he court may award damages, compensation, or ancillary relief only to the extent expressly authorized by another provision of law." RCW 34.05.574(3). We award

---

[19] The appellants also sought compensatory and punitive damages under 42 USC §§ 1983 and 1988, but those causes of action were dismissed with prejudice in federal court. *Johnson*, 2019 WL 1429503 at *7.

[20] This entire case was not rendered moot by the expiration of the appellants' terms of office because they also made a claim for reasonable attorney fees under the OPMA.

costs and attorney fees to any person who "prevails against a public agency" that has violated the OPMA. RCW 42.30.120(4).

Here, the appellants did not prevail under the APA because they were not substantially prejudiced. Likewise, the appellants cite to no other "provision of law" under which they are entitled to fees or costs for the purposes of the APA. Accordingly, we do not award any relief under the APA.

Additionally, although the Commission did violate RCW 42.30.140(3) of the OPMA, that section states that the OPMA does not apply to issues that are properly under the APA. The relief sought by the appellants was based on their argument that the removal hearing was not proper under the APA. For the reasons explained above, we agree. Since the OPMA does not apply, we do not award any costs or fees under the OPMA. Thus, we hold that the appellants are not entitled to fees.

## V. CONCLUSION

We hold that the trial court did not err when it granted summary judgment and found that the removal of Mankamyer from his elected position did not violate article I, section 33 of the Washington Constitution. Accordingly, we hold that removing elected conservation district supervisors under RCW 89.08.200 does not violate article I, sections 33 and 34 or article V, section 3 of the of the Washington Constitution. We hold that the trial court did not err when it found that the Commission improperly held the removal hearing outside the APA and under the OPMA. Although the Commission need not hold all hearings under the APA, it is required to hold RCW 89.08.200 removal hearings under the APA. However, we hold that the appellants were not substantially prejudiced by the agency's failure to use proper procedure. Finally, we

hold that any remand to the agency to review the appellants' removal would be impracticable and futile because both of their terms have since expired.

Consequently, we *affirm* the trial court's summary judgment and rulings on RCW 89.08.200 because it did not err in determining that that the statute does not conflict with the constitution and that a recall is not required. We *affirm* the trial court's ruling that the removal hearing should have been held under the APA. We *reverse* the trial court's ruling that the appellants' were denied procedural rights, which resulted in substantial prejudice to them. We *vacate* the trial court's order remanding the hearing to the Commission because it would be futile because both Johnson and Mankamyer's terms have expired.

Worswick, J.

We concur:

Sutton, A.C.J.

Cruser, J.

30