**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| AHMET CHABUK, | No. 55034-2-II |
| Appellant, | |
| v. | |
| CITY OF TACOMA, a Washington Municipal Corporation, through its Neighborhood and Community Services Department and its Department of Public Utilities, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Ahmet Chabuk owns a house in Tacoma, which he rented to tenants. The City of Tacoma boarded up the house after an inspector determined the property was unsafe. Tacoma charged Chabuk for the board-up, and Tacoma Public Utilities (TPU) also fined him for certain illicit reconnection fees incurred when his tenants reconnected to utilities after they were cut off for nonpayment. Chabuk appealed the charges to the Tacoma Hearing Examiner. Both parties moved for summary judgment and the Hearing Examiner ruled in the City's favor. On appeal to the superior court, the court affirmed the Hearing Examiner's decision and denied Chabuk's motion for reconsideration.

Chabuk appeals the superior court's order denying his motion for reconsideration. He argues that (1) the Hearing Examiner violated due process when it cited a different portion of the Tacoma Municipal Code (TMC) from the one cited in his notice of violation, (2) the City

violated due process when it boarded up the house without first notifying Chabuk, (3) TMC 2.01.070.B.2 violates due process because it allows for the City to charge the homeowner for costs incurred with boarding up the building without prior notice, and (4) the superior court erred when it ruled that Chabuk had not exhausted his administrative remedies when disputing the TPU reconnection fee. We hold that none of the disputed actions or code provisions violate due process. We further hold that Chabuk did not exhaust his administrative remedies when disputing the TPU reconnection fee. Accordingly, we *affirm*.

## FACTS AND PROCEDURAL HISTORY

### I. BACKGROUND

Chabuk owns residential real property in Tacoma ("the house"). Chabuk uses the house as a rental property. In February 2018, Chabuk received a notice from TPU's Electrical Inspection Department that the house had multiple "electrical safety concerns and/or code violations." CP at 171. TPU notified Chabuk that it had cut off electrical power to the house. Also, Chabuk's tenants had failed to pay the power and water bills. TPU placed an electrical inspection hold on the account. TPU's notice to Chabuk included a list of potential fees, including a permit fee and a "reconnect fee." CP at 171. In March, TPU cut off water to the house. At some point, water service was surreptitiously turned back on. Also, Chabuk's tenants tampered with the electricity meter and connected a generator.

At all times during this dispute, Chabuk had at least two accounts with TPU related to the house. The first was a "surface water" account and the second was a waste water and drinking

water account that TPU created in March after it discovered that water service had been turned back on at the house without authorization.  CP at 180.

Throughout 2018, TPU sent Chabuk several notices and invoices.  These included a $100 charge for "unauthorized reconnection" of the water service, drinking water and wastewater charges ($475.98), and a "surface water" charge ($76.45).  CP at 38, 87, 124.  The $100 reconnection fee included the text of TMC 12.10.110, which details the fees for unauthorized reconnection of water service.  Chabuk also received a past due balance notice and a charge from the Municipal Services Bureau (MSB) collection agency for $384.74 for unpaid TPU charges.

A June 13 Tacoma Neighborhood and Community Services division (NCS) report states that a Tacoma code compliance officer inspected the house and discovered no running water, no electricity, and 17 people living in the house.  The compliance officer noted that the water meter had been tampered with.  The compliance officer explained that the tenants had hooked up a generator inside the garage with an extension cord hooked to the electrical panel near the meter.  On June 15, Chabuk sent his tenants a letter to comply with the rental agreement or quit the premises.

On June 26, NCS boarded up the house.  A June 26 NCS inspection sheet shows that an inspector determined the house was derelict, to include "hazardous or inadequate wiring," "hazardous or inadequate plumbing which present a hazard to health," "hazardous mechanical equipment which present a hazard to health, life, or limb," hazardous or unsanitary premises, inadequate exits and fire protection equipment, and improper occupancy.  CP at 376-78.  NCS returned on June 27 and July 11 to re-board windows.  The City had to repeatedly board up the

house after the tenants would apparently tear down the boards and reenter the premises. On August 22, NCS sent Chabuk an invoice for $1,242.97 for "building charges through June 2018" that included labor charges for boarding up the house. CP at 82.

On September 4, NCS sent Chabuk two notices of violation: a Notice of Violation of the Minimum Building and Structures Code and a Notice of Violation and Abatement. The Notice of Violation of the Minimum Building and Structures Code stated that the house had been "classified as a derelict building in accordance with [TMC] 2.01.050.C.3 and Table B 'Derelict Buildings and Structures.'" CP at 40. It stated that the building had been posted as "must not be occupied" and that the City had placed a utility restraint on the building. CP at 40. It requested Chabuk secure the building within 10 days of the notice. CP at 40. The notice stated that Chabuk must submit a repair plan to the City within 21 calendar days. The notice then explained how to challenge the notice of violation and contact city officials. NCS included excerpts from TMC 2.01.050, including owner notification procedures, the owner's required response to the city, potential penalties, and notice of the ability to request administrative review of the violation. The excerpt also included the standards and procedure for securing buildings, TMC 2.01.070. The TMC excerpt stated, in pertinent part,

> If a building is occupied and determined by the City to be in violation of this chapter and presents an immediate danger to the health, safety, and welfare of the occupants or the public, the building shall be ordered vacated by the Building Official, and the Building Official shall cause the building to be immediately secured from unauthorized third-party entry. In the event that the City secures the building, all costs incurred shall be assessed to the owner of the property and the City may classify the building as derelict or unfit.

4

CP at 44 *citing* TMC 2.01.070.B.2.[1]

The Notice of Violation and Abatement stated that the house was inspected and found to be in violation of the nuisance code, chapter 8.30 TMC. This notice also included the relevant public nuisance code sections and appeal procedures.

On September 5, NCS sent Chabuk an invoice for $580.14 for additional board-up charges. That same day, Chabuk filed a request for a hearing with the City Hearing Examiner in which he challenged the NCS fees as well as the TPU and MSB charges. In his request for hearing, Chabuk stated that he "paid the $1,242.97 under protest . . . and dispute[s] those charges because the charges were imposed arbitrarily without justification and without due process." CP at 31. In a September 28 email to the City, Chabuk stated that he also paid the $580.14 under protest.

## II. HEARING EXAMINER

A.      *Parties' Cross-Motions for Partial Summary Judgment*

1. *City's Motion for Partial Summary Judgment*

On November 1, 2018, the City filed a motion for partial summary judgment with the City Hearing Examiner. The City sought summary judgment on all parts of Chabuk's appeal except the portion related to the violation of the nuisance code. The City argued that it had the authority to board up the house under TMC 2.01.070.B.2, but that its decision to board up the

---

[1] This wording is identical to TMC 2.01.070.B.2. NCS cited this in the notice as TMC 2.01.090.B.2. CP at 44. Because there is no section 2.01.090 in the TMC, and the only place in Title 2 of the TMC where these exact words appear is 2.01.070.B.2, it is clear that NCS's citation to -.090 is a scrivener's error, and the correct citation is to 2.01.070.B.2.

house was not appealable to the Hearing Examiner because the Hearing Examiner does not explicitly have jurisdiction for board-up decisions because TMC 2.01.070 does not give a hearing examiner *explicit* authority. The City also argued that to the extent Chabuk challenged NCS's decision to designate the house as derelict, his appeal was premature.

Regarding the TPU charges, the City argued that Chabuk failed to exhaust his administrative remedies before appealing his TPU charges to the Hearing Examiner because Chabuk did not follow the procedure for contesting his TPU charges. *See* Former TMC 12.08.520 (2018) (storm, surface water, and sewerage challenges); Former TMC 12.08.678 (2018) (requiring a formal determination by the City Director of Environmental Services); Former TMC 12.08.007; -.090 (2018) (authorizing TPU to set and enforce an administrative avenue for billing disputes); TMC 12.10.505 (Water Division customer service mandate).

2. *Chabuk's Motion for Partial Summary Judgment*

On November 5, Chabuk filed a motion for partial summary judgment. He asked the Hearing Examiner to return the $1,242.97 and $580.14 board-up charges. Chabuk argued that TMC 2.01.050.D and 2.01.070.B[2] required the City to notify him before boarding up the house. He also argued that he was not responsible for the $100 unauthorized reconnection fee because it was his tenants who reconnected the water.[3]

Neither party included the nuisance violation in its motion.

---

[2] Chabuk argued that TMC "2.01.050 D and TMC 2.01.090 B" require the City to notify him before any boarding up. CP at 190. TMC 2.01.090 does not exist. This is a continuation of the scrivener's error explained in footnote 1, *supra*.

[3] Chabuk also requested attorney's fees.

3. *City's Response to Chabuk's Motion*

On November 16, the City responded to Chabuk's motion and argued that it had the authority to board up the house under the TMC. The City re-raised its argument that the Hearing Examiner had no jurisdiction over decisions by the City to board up houses under TMC 2.01.070. The City also argued that Chabuk failed to establish that the TPU charges—namely the $100 unauthorized reconnection fee—were properly before the Hearing Examiner.

In his reply to the City's response, Chabuk argued that the City Hearing examiner had jurisdiction over his dispute because the instructions he received in the mail with his prehearing conference materials stated that requests for administrative reviews shall be made with the City Community Services Division. He disputed the City's interpretation of the TMC and also argued that the City had violated his due process rights and that questions of due process were properly within the Hearing Examiner's jurisdiction.

4. *Chabuk's Response to City's Motion*

In response to the City's motion, Chabuk argued that the Hearing Examiner had jurisdiction to rule on all of the NCS and TPU charges. He cited no law and argued that his due process rights had been violated because the City acted without first notifying him.

In its reply to Chabuk's response, the City argued that Chabuk did not cite any "reasoned authority or argument" to support his position that the City had violated his due process rights. CP at 213. The City argued that Chabuk raised no issue of material fact and that his dispute was a disagreement only as to whether the City had the authority to take certain actions before notifying Chabuk.

B.      *Hearing Examiner's Decision & Order*

The Hearing Examiner issued a Decision and Order on the parties' cross-motions for partial summary judgment on December 4, 2018. As an initial matter, the Hearing Examiner noted that the facts relevant to its decision were not in dispute.

Then, the Hearing Examiner concluded that it did not have jurisdiction over Chabuk's due process notice arguments. The Hearing Examiner ruled that its authority was granted under RCW 35.63.130 and that its power included "appeals of administrative decisions or determinations." CP at 222 (quoting RCW 35.63.130(b)) (internal quotation marks omitted). The Hearing Examiner therefore concluded that it "does not have plenary authority over constitutional issues." CP at 228.

Conversely, the Hearing Examiner ruled that it did have jurisdiction to decide Chabuk's challenge to the boarding up fees. Quoting TMC 1.23.050.B.22, the Hearing Examiner explained that it had authority to conduct administrative proceedings for "[a]ppeals arising out of the City's Minimum Building and Structures Code (Chapter 2.01)." CP at 225-26 (quoting TMC 1.23.050.B.22) (internal quotation marks omitted).

The Hearing Examiner then ruled that Chabuk's challenge to the board-up charges was "unsupported by the undisputed facts" did not cite to any authority, and that the City had the authority to board up the house under TMC 2.01.070.B.2. CP at 227-28. After reviewing the discrepancies and deficiencies found at the house by the NCS inspectors, the Hearing Examiner ruled that "[t]he City was justified in finding an immediate danger." CP at 219-20, 227. The Hearing Examiner dismissed Chabuk's challenge to the board-up fees with prejudice.

The Hearing Examiner then ruled that Chabuk had not exhausted his administrative remedies for the TPU charges before his request for review with the Hearing Examiner and that Chabuk had made no showing of futility. The Hearing Examiner explained that the TPU customer service policies are readily available on the Internet and that Chabuk did not follow the City's policy to challenge the fees. It therefore dismissed Chabuk's challenge to the TPU unauthorized reconnection fee without prejudice.

After the Hearing Examiner's decision on the cross-motions for summary judgment, it held a hearing for the remaining issues on December 6. The Hearing Examiner explained that the only remaining issue before it was the nuisance violations. Chabuk verbally moved to withdraw his appeal of the nuisance violations. The Hearing Examiner then dismissed Chabuk's appeal.

On December 20, Chabuk filed a motion for reconsideration. In it, Chabuk stated that he contacted the City's accounting department to argue with the city about the charges. However, Chabuk never initiated the bill dispute process. On January 7, 2019, the Hearing Examiner denied Chabuk's request for reconsideration of its summary judgment decision. In February 2019, Chabuk petitioned the Pierce County Superior Court to review the Hearing Examiner's decision.

### III.  SUPERIOR COURT

On March 13, 2020, Chabuk filed an "Opening Brief of Petitioner on Judicial Review of Agency Action." CP at 311. He stated that the facts of the case were "not really disputed," and argued again that the City had violated his due process rights under the U.S. and Washington

constitutions. CP at 312. He re-raised his futility argument to oppose the Hearing Examiner's exhaustion of administrative remedies ruling. He also requested sanctions against the City attorney.

The superior court issued an order on review of agency action in May 2020. The court stated that it reviewed Chabuk's petition as a statutory writ under RCW 7.16.120. The superior court did not reach Chabuk's constitutional arguments. The court ruled that the City properly boarded up the house under TMC 2.01.070.B.2 and that Chabuk had not exhausted his administrative remedies regarding the TPU charges, and affirmed the ruling of the Hearing Examiner.

Chabuk filed a motion for reconsideration in June, again arguing that his due process rights had been violated. This time he added that the Hearing Examiner and superior court violated his due process rights because each cited to TMC 2.01.070.B.2 in their decisions but the September 4 notice of violation stated that the City determined the house was derelict under TMC 2.01.050.C.3. He also argued that the court erred when it declined to address his constitutional due process claims.

The superior court denied Chabuk's motion in June 2020. Chabuk appeals the order denying his motion for reconsideration.

## ANALYSIS

Chabuk argues that the City violated his right to procedural due process under the U.S. and Washington constitutions when it boarded up the house without first notifying him. He further argues that TMC 2.01.070.B.2, which mandates that the City immediately secure

buildings found to present an immediate danger to health, safety, and welfare of the occupants or the public, and then charge the owner of the property, violates procedural due process. Finally, Chabuk argues that he should not be required to exhaust his administrative remedies because he is not a "customer" of TPU. Br. of Appellant at 30. Each of Chabuk's arguments fail.

## I. DUE PROCESS

A.    *Legal Authorities*

1. *Summary Judgment and Administrative Review*

When reviewing the appeal of a statutory writ, we review conclusions of law de novo. *Seattle Housing Auth. v. City of Seattle*, 3 Wn. App. 2d 532, 537, 416 P.3d 1280 (2018). This case was originally decided on summary judgment and accordingly we review the grant or denial of a motion for summary judgment de novo. *Wash. Republican Party v. Wash. Public Disclosure Comm'n*, 141 Wn.2d 245, 254, 4 P.3d 808 (2000); *see also Verizon Nw, Inc. v. Wash. Emp't Sec. Dep't*, 164 Wn.2d 909, 915-16, 194 P.3d 255 (2008) (overlaying the administrative standard of review with the summary judgment standard).

We sit in the same position as the superior court and review the administrative record before the hearing examiner. *Catsiff v. McCarty*, 167 Wn. App. 698, 703, 274 P.3d 1063 (2012). We evaluate the facts in the administrative record de novo. *City of Seattle v. Am. Healthcare Servs., Inc.*, 13 Wn. App. 2d 838, 853, 468 P.3d 637 (2020). Summary judgment is appropriate where the administrative record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *City of Bonney Lake v. Kanany*, 185 Wn. App. 309, 314, 340 P.3d 965 (2014) (published in part). On cross motions for summary

judgment, we view the evidence in the light most favorable to the non-moving party with respect to the particular claim. CR 56; *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 597, 260 P.3d 857 (2011).

2. *Due Process*

Article I, section 3 of the Washington State Constitution provides, "No person shall be deprived of life, liberty, or property, without due process of law." The procedural due process component of this provision mandates that "[w]hen a state seeks to deprive a person of a protected interest," the person must "receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation." *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006) *abrogated in part on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 688-89, 699, 451 P.3d 694 (2019). Section 1 of the Fourteenth Amendment to the U.S. Constitution provides that the State shall not deprive any person of property without due process of law. The fundamental requirement of due process "is the opportunity to be heard at a meaningful time and in a meaningful manner." *Bonney Lake*, 185 Wn. App. at 315 (quoting *Post v. Tacoma*, 167 Wn.2d 300, 313, 217 P.3d 1179 (2009)).

3. *Interpretation of Municipal Code*

We interpret municipal ordinances de novo. *Seattle Housing Auth.*, 3 Wn. App 2d at 538. "The same rules of statutory construction apply to the interpretation of municipal ordinances as to the interpretation of state statutes." *Seattle Hous. Auth.*, 3 Wn. App. 2d at 538 (quoting *City of Seattle v. Green*, 51 Wn.2d 871, 874, 322 P.2d 842 (1958) (internal quotation marks omitted). We interpret a statute to ascertain and carry out the legislature's intent. *Citizens All. v. San Juan*

12

*County*, 184 Wn.2d 428, 435, 359 P.3d 753 (2015). Where a statute's meaning is plain on its

face, we give effect to the plain meaning. *Citizens All.*, 184 Wn.2d at 435. "Commonsense

informs our analysis, as we avoid absurd results in statutory interpretation." *Seattle Housing*

*Auth.*, 3 Wn. App. 2d at 538-39 (quoting *State v. Alvarado*, 164 Wn.2d 556, 562, 192 P.3d 345

(2008)) (internal quotation marks omitted).

B.      *Municipal Code Section Applied by the Hearing Examiner*

As an initial matter, Chabuk argues that the Hearing Examiner and superior court violated

his right to due process when they "substituted TMC 2.01.050.C.3 . . . and replaced it with TMC

2.01.070.B.2" in their respective rulings. Br. of Appellant at 4, 25-26. We disagree.

Chabuk misreads the record and statutory provisions. In its Notice of Violation of the

Minimum Building and Structures Code, the City informed Chabuk that the house had been

"classified as a derelict building in according with Tacoma Municipal Code Section

2.01.050.C.3." CP at 40. TMC 2.01.050.C.3 defines the meaning of the term "derelict buildings

or structures" and provides the action the City must take when it determines a building is

derelict. It provides:

> a. 'Derelict Buildings or Structures' means any building or structure, whether residential or commercial, which is not approved for human occupancy based on one or more of the violations outlined in Table B.
> b. Derelict Buildings or Structures shall be posted 'MUST NOT BE OCCUPIED.' See Subsection H, Posting of Buildings. Utility restraints may be placed on such buildings or structures. See Subsection I, Utility Restraints. Derelict Buildings which are posted shall not be occupied for any purpose until repaired. The Derelict Building shall only be authorized to be entered for preparing a repair plan and schedule to be submitted to the Neighborhood and Community Services Department for approval. Upon approval of the repair plan and schedule, the owner, or his or her representative, will be authorized to enter the building to effect

repairs. No other entry or occupancy of the building shall be permitted unless approved by the Building Official.

TMC 2.01.050.C.3. Table B provides a list of dangers and violations a building may incur.

Here, the City properly determined the house was derelict under TMC 2.01.050.C.3. The house had "hazardous or inadequate wiring," "hazardous or inadequate plumbing which present a hazard to health," "hazardous mechanical equipment which present a hazard to health, life, or limb," hazardous or unsanitary premises, inadequate exits and fire protection equipment, and improper occupancy, all of which violate provisions of Table B and contribute to a derelict finding under TMC 2.01.050.C.3. CP at 377-78.

In Chabuk's request for a hearing, he challenged the City's authority to board up the house. When the City moved for summary judgment, it argued that it had the authority to board up the house under TMC 2.01.070.B.2. TMC 2.01.070.B.2 provides:

> If a building is occupied and determined by the City to be in violation of this chapter and presents an immediate danger to the health, safety, and welfare of the occupants or the public, the building shall be ordered vacated by the Building Official, and the Building Official shall cause the building to be immediately secured from unauthorized third-party entry. In the event that the City secures the building, all costs incurred shall be assessed to the owner of the property and the City may classify the building as derelict or unfit.

Here the building was occupied. At least 17 people were living there at the time of the city inspection and, despite the board-up, returned to the house and tore down the boards more than once. As explained above, the house had multiple hazardous deficiencies and under the plain language of the TMC was therefore an "immediate danger to health, safety, and welfare of the occupants."

The Hearing Examiner and superior court did not violate due process. Each merely relied on the correct section of the TMC, 2.01.070.B.2, to explain the City's authority to board up the house. Chabuk never challenged the City's determination that the house was derelict under TMC 2.01.050.C. He called it a "distraction from the fact that the City violated the due process in boarding up the house." CP at 204 (Appellant's Resp. in Opp'n to [City's] Mot. for Partial Summ. J.). Because Chabuk never challenged the City's determination that the house was derelict, there was no reason for the Hearing Examiner to cite TMC 2.01.050.C. This was a proper use of the Hearing Examiner's authority under TMC 1.23.050.[4] The superior court merely affirmed based on the Hearing Examiner's reasoning.

Moreover, Chabuk conflates the purpose of TMC 2.01.050.C and 2.01.070.B.2 throughout his briefs below and to this court. Although similar facts may be used to support each of the City's determinations (the dangerous conditions in the house), they are separate administrative decisions.

Section 2.01.050 of the TMC defines Administration and Process for building classifications and subsection C mandates how the City shall classify buildings and structures when enforcement action is undertaken against those buildings or properties. The City cited TMC 2.01.050.C in its September 4 Notice of Violation of the Minimum Building and Structures Code to Chabuk to explain that it had determined the house to be derelict. This was a decision independent of the City boarding up the house, which it did because of the immediate danger the

---

[4] TMC 1.23.050 provides the Hearing Examiner's areas of jurisdiction and states that it "shall conduct adjudicative proceedings . . . and enter findings of fact [and] conclusions of law."

house presented. TMC 2.01.070.B.2 mandates City procedures for securing occupied buildings that have been determined to violate the City code—regardless of whether the building has been determined to be derelict. Indeed, TMC 2.01.070.B.2 contemplates the building not yet being derelict because it states that "the City may classify the building as derelict or unfit." Accordingly, the Hearing Examiner and superior court cited to the correct section of the TMC when ruling on Chabuk's challenge to the City's board-up of the house.

C.      *Notice Required for Boarding-Up House that Presents Immediate Danger to Health and Safety*

Chabuk argues that the City violated his right to due process when it boarded up the house without notifying him first. He further argues that TMC 2.01.07.B.2 violates procedural due process because it allows the City to board up the house without reasonable prior notice to the owner. We disagree.

1. *Due Process: Boarding Up House Without Prior Notice*

Chabuk first argues that the City exceeded its authority under the TMC and violated due process when it boarded up the house without first notifying Chabuk. We disagree.

At a minimum, due process requires notice and an opportunity to be heard appropriate to the case at a meaningful time and in a meaningful manner. *Hasit LLC v. City of Edgewood (Local Improvement Dist. #1)*, 179 Wn. App. 917, 953, 320 P.3d 163 (2014). "However, while the minimal requisites of due process are definite, their form may vary according to the exigencies of the particular situation." *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 423, 511 P.2d 1002 (1973). Absent exigent circumstances, due process requires a hearing before a party is deprived of due process. *Tellevik v. Real Prop. Known as 31641 W. Rutherford*

16

*St., Carnation, Wash.*, 125 Wn.2d 364, 371, 884 P.2d 1319 (1994). Due process is flexible and safeguards should be tailored to the specific function they serve. *Olympic Forest Prods.*, 82 Wn.2d at 423. Therefore, we consider:

> The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, (and) the balance of hurt complained of and good accomplished . . .

*Olympic Forest Prods.*, 82 Wn.2d at 423-24 (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 163, 71 S. Ct. 624, 644, 95 L. Ed. 817 (1951) (Frankfurter, J., concurring)).

Here, exigent circumstances support the City's ability to deprive access to a building for public safety. Merriam-Webster's Online Dictionary defines "exigent" as "requiring immediate aid or action."[5] It defines "immediate" as "occurring, acting, or accomplished without loss or interval of time: instant."[6] As explained above, TMC 2.01.070.B.2 authorizes the City to immediately secure buildings that it determines "present[] an immediate danger to the health, safety, and welfare of the occupants or the public." The plain language of this ordinance shows that it is designed to preserve the safety and well-being of anyone entering a building lest they be exposed to danger the instant they enter the building.

"[T]he balance of hurt complained of and good accomplished" weighs heavily in favor of the City's need to secure a building that presents an immediate danger. *Olympic Forest Prods.*,

---

[5] https://www.merriam-webster.com/dictionary/exigent (last visited Nov. 7, 2021).

[6] https://www.merriam-webster.com/dictionary/immediate (last visited Nov. 7, 2021).

82 Wn.2d at 424 (quoting *McGrath*, 341 U.S. at 163). The good accomplished is preventing injury or death from the hazards in the subject building. The City has a compelling interest in the safety and welfare of its citizens. *City of Seattle v. Larkin*, 10 Wn. App. 205, 210, 516 P.2d 1083 (1973).

Additionally, the TMC provides for an appeal once the property owner is notified. TMC 2.01.050.5 provides:

> a. General. Any person who receives a Notice of Violation for a Substandard or Derelict Building(s) *or a civil penalty* may request an administrative review of the notice or penalty.
> An appeal of a civil penalty shall be limited to assessing any progress which the property owner has made in correcting the violations identified in the first notice, or the property owner's compliance with the repair plan and schedule that led to the issuance of the civil penalty.
>
> b. How to Request Administrative Review. A person may request an administrative review by the Building Official by filing a written request with the Neighborhood and Community Services Department within:
>
> i. 21 calendar days of the first notification date of violations for a Notice of Violation for substandard building or property, or
>
> ii. ten calendar days of a Notice of Violation for a derelict building or property.
>
> iii. ten calendar days of a notice of a civil penalty.
>
> In any appeal, the request must include all reasons and supporting documentation as to why the notice should be overturned and/or modified.

(Emphasis added). The Building Official's decision may be appealed to the Hearing Examiner. TMC 2.01.050.6. The Hearing Examiner then has jurisdiction over these appeals. TMC 1.23.050.B.22.

Here, a City inspector found multiple dangerous deficiencies at the house. The same day, the City secured the house. The City then sent Chabuk an invoice for the board up charges. The TMC provides a procedure for Chabuk to obtain a hearing once notified of the board-up. Thus, the City provided an opportunity to be heard after first securing the exigent dangers at the house. Accordingly, we hold that the City did not violate due process when it boarded up the house without first notifying Chabuk.

2. *Due Process: Constitutionality of TMC 2.01.070.B.2*

Next, Chabuk argues that TMC 2.01.070.B.2 violates procedural due process because it allows the city to board up the house without reasonable prior notice to the owner. We disagree.

As explained above, TMC 2.01.070.B.2 provides:

> If a building is occupied and determined by the City to be in violation of this chapter and presents an immediate danger to the health, safety, and welfare of the occupants or the public, the building shall be ordered vacated by the Building Official, and the Building Official shall cause the building to be immediately secured from unauthorized third-party entry. In the event that the City secures the building, all costs incurred shall be assessed to the owner of the property and the City may classify the building as derelict or unfit.

We presume municipal ordinances are constitutional. *City of Spokane v. Douglass*, 115 Wn.2d 171, 177, 795 P.2d 693 (1990); *State v. Immelt*, 173 Wn.2d 1, 6, 267 P.3d 305 (2011). The party challenging the ordinance bears the burden of proving unconstitutionality. *Immelt*, 173 Wn.2d at 6 (citing *Voters Educ. Comm. v. Wash. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 481, 166 P.3d 1174 (2007)).

As explained above, the immediate dangers presented by the faults inside the house created an exigency. Under the plain language of TMC 2.01.070.B.2, the City has the authority

to immediately secure such buildings where there is such "immediate" danger. The balance of the good from this provision outweighs the harm because TMC 2.01.070.B.2 provides for public safety—a compelling government interest—in exigent circumstances. *See Olympic Forest Prods.*, 82 Wn.2d at 423-24. Likewise, the TMC provides for an administrative appeal of the decision. TMC 2.01.050.5. Thus, the TMC meets the minimum due process requirements for notice and an opportunity to be heard appropriate to the case at a meaningful time and in a meaningful manner. *See Hasit LLC*, 179 Wn. App. at 953. Accordingly, we hold that TMC 2.01.070.B.2 does not violate due process.

D.      *City's Authority to Charge Property Owner and Not Tenants*

Chabuk also argues that the City violated his procedural due process rights when it charged him, instead of his tenants, for the board-up costs. He argues multiple times without citing authority that the costs are his "tenants' payment obligations" and that the City had no authority to "shift" their obligations to him. Br. of Appellant at 5, 8, 13, 14, 17-20, 25, 26. We disagree.

As an initial matter, the plain language of the TMC makes it clear that if a building is secured by the city for immediate dangers, "all costs incurred shall be assessed to the owner of the property." TMC 2.01.070.B.2. It is undisputed that Chabuk is the property owner. Thus, the City had the authority to charge him for the board-up costs.

Chabuk cites no authority to support his argument that due process requires that only his tenants bear the costs of city municipal code violations. Where a party does not cite such authority, we assume there is none. *Peterson v. Wash. Dep't of Labor & Indus.*, 17 Wn. App. 2d

208, 237, 485 P.3d 338 (2021).  Accordingly, Chabuk can neither show that the tenants had payment obligations to the City, nor that charging him for the board up costs violates due process.  Thus, for the reasons explained in sections B and C above, we hold that Chabuk's due process rights were not violated.

## II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES TO DISPUTE UTILITY FEES

Turning to Chabuk's challenge to the TPU charges,[7] Chabuk argues that he was not required to exhaust administrative remedies because he was not a TPU customer.  He also argues that his efforts to exhaust administrative remedies were futile.  We disagree.[8]

As stated in Part I above, we sit in the same position as the superior court and review the administrative record before the hearing examiner.  *Catsiff*, 167 Wn. App. at 703.  We review the facts in the administrative record de novo.  *Am. Healthcare Servs., Inc.*, 13 Wn. App. 2d at 853.  The TMC requires appellants to the Hearing Examiner to exhaust administrative appeals.  TMC 1.84.040.E; *see also* former 12.08.520, -.678 (2018); 1.23.050.B.  Moreover, our Supreme

---

[7] TPU charged Chabuk for wastewater, surface water, and unauthorized reconnection fees.

[8] To the extent that Chabuk argues that the City does not have the authority to charge him, instead of his tenants, for TPU fees, this argument also fails.  The City's Uniform Enforcement Code mandates uniform regulation enforcement for all City regulations; it  provides:

> It is the intent of this chapter to place the obligation of complying with regulatory requirements that are made subject to enforcement under the provisions of this chapter upon the *owner*, occupier, or other person responsible for the condition of the land and/or structures, and upon persons otherwise responsible for actions regulated pursuant to such regulations.

TMC 1.82.020.B (emphasis added).  Likewise, the TMC mandates a presumption that the owner is responsible for any code violations, although it does not preclude enforcement against other persons.  TMC 1.82.020.G.

Court has held that "'when an adequate administrative remedy is provided, it must be exhausted before the courts will intervene.'" *Cost Mgmt. Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 641, 310 P.3d 804 (2013) (quoting *Wright v. Woodard*, 83 Wn.2d 378, 381, 518 P.2d 718 (1974)). "To determine if the rule applies, we examine whether the party seeking relief 'has an administrative remedy' and whether any 'attempt has been made to pursue that remedy.'" *Cost Mgmt. Servs., Inc.*, 178 Wn.2d at 641 (quoting *Wright*, 83 Wn.2d at 382). Where a party does not pursue available administrative remedy before turning to the courts, then the court need not address the issue. *Cost Mgmt. Servs., Inc.*, 178 Wn.2d at 641.

We may excuse exhaustion of administrative remedies as futile when "the available administrative remedies are inadequate, or if they are vain and useless." *Buechler v. Wenatchee Valley Coll.*, 174 Wn. App. 141, 154, 298 P.3d 110 (2013) (quoting *Orion Corp. v. State*, 103 Wn.2d 441, 458, 693 P.2d 1369 (1985)) (internal quotation marks omitted). Futility is a question for the court. *Buechler*, 174 Wn. App. at 154.

First, Chabuk's argument that he is not subject to the rule requiring exhaustion of administrative remedies because he is not a customer of TPU fails. Chabuk owns the house in Tacoma. At all times during this dispute, Chabuk had at least two accounts with TPU related to the house. The first was a "surface water" account and the second was a waste water and drinking water account that TPU created in March after it discovered that water service had been turned back on at the house without authorization. Thus, he was a TPU customer and subject to the TMC and any administrative remedies the City provided.

Turning to the wastewater and surface water charges, former TMC Chapter 12.08 (2018) governed wastewater and surface water management. Under Former TMC 12.08.520 (2018), the City provided the administrative dispute procedure and manner of reconsideration for storm and surface water charges:

> If an owner or other person responsible for paying storm and surface water sewerage charges is of the opinion that the rate thereof and resulting charge applicable to that owner or other person is based on erroneous information, that owner or other person may produce such information as the Director [of the Environmental Services Department][9] reasonably requires and, if warranted in the reasonable opinion of the Director, the Director shall make an appropriate adjustment to such rate or charge.

The City also mandated that only after the Director has made a determination may an appellant file an appeal with the Hearing Examiner. Former TMC 12.08.678 (2018).

There is nothing in the record on appeal that shows Chabuk first contacted the Director of the Environmental Services Department to request reconsideration of these fees. Chabuk makes no showing of futility. Thus, Chabuk did not exhaust administrative remedies at the lowest level before appealing the wastewater and surface water charges to the Hearing Examiner.

Next, the unauthorized water reconnection charge is mandated under TMC 12.10.110. Under the same TMC chapter, the City may mandate an administrative appeal process under its Customer Services Policies. TMC 12.10.505 provides, in pertinent part:

> The Superintendent, [of the Water Division of the Department of Public Utilities][10] with the approval of the Director, *may promulgate and enforce Customer Service Policies* and related additional rules and standards as may be deemed appropriate to implement this chapter, to encourage conservation and the efficient use of water, *and for further clarification of service*.

---

[9] *See* Former TMC 12.08.007 (2018).
[10] TMC 12.10.020.

(Emphasis added). TPU's Customer Service Policies that TPU implemented by Utility Board Resolution #U-10748 provided for a bill dispute process. The policy states that customers must first contact TPU Customer Services by phone or in person to request an informal conference. Former TPU Customer Service Policies 6.2.6.2 (2015). From there, TPU provides a dispute form and holds a conference. Former TPU Customer Service Policies 6.2.6.2 (2015). After the conference, TPU Customer Services provides a written decision. Former TPU Customer Service Policies 6.2.6.2 (2015). After that decision, the customer may appeal the decision to the hearing examiner. Former TPU Customer Service Policies 6.2.6.2 (2015).

Here, although Chabuk called the City accounting department, he never initiated the bill dispute process as required by the City's Customer Service Policies and he did not request a conference. Thus, he did not exhaust the administrative remedies as mandated by the TMC and TPU.

To the extent Chabuk argues that his efforts to exhaust remedies were futile, his argument fails. Chabuk made numerous calls to the City accounting department but, as stated above, never contacted TPU customer service. Making multiple phone calls to the wrong City office does not rise to the level of futility required to excuse exhaustion of administrative remedies. Accordingly, we hold that the Hearing Examiner properly dismissed Chabuk's challenge to the TPU charges for failure to exhaust administrative remedies.

ATTORNEY FEES

Chabuk argues that we should award him attorney fees on appeal. We disagree.

First, Chabuk argues that he is entitled to fees under RCW 4.84.330, which provides, in pertinent part: "In any action on a contract or lease . . . the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements." But this is not an action on a contract or a lease and moreover Chabuk does not prevail.

Next, Chabuk argues that we should award him fees under RCW 4.84.350, which provides for fees to be awarded on judicial review of agency action. This argument fails for two reasons. First, Chabuk does not prevail. Second, RCW 4.84.350 is not apt because "agency action" under that statute means "agency action" as defined by the Administrative Procedures Act, chapter 34.05 RCW, which does not apply here. RCW 4.84.340.

Finally, Chabuk argues we court should award him fees under RCW 4.84.185. That statute provides that we may award the prevailing party costs where the nonprevailing party's arguments are frivolous. RCW 4.84.185. Chabuk does not prevail and he makes no showing that the City's arguments were frivolous. Accordingly, he is not entitled to fees.

CONCLUSION

We hold that the Tacoma Hearing Examiner properly relied on the correct sections of the TMC. Next, we hold that the City did not violate procedural due process when it boarded up Chabuk's house without prior notice because the record on appeal shows that it presented an exigent, immediate danger. We further hold that TMC 2.01.070.B.2 does not violate due process

25

because Chabuk was afforded a full opportunity to appeal all aspects of the notice of his violation. Likewise, the City has the authority under the TMC to charge Chabuk, as the property owner, for the violations. Finally, we hold that Chabuk did not exhaust administrative remedies in disputing the TPU charges and that the Hearing Examiner properly dismissed that portion of his case. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Veljacic, J.

_____
Price, J.